**In re William R. BELES and Shirley A. Beles, Debtors.**

**Bankruptcy No. 1–91–02233.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 26, 1991.

Henry D. Acciani, Cincinnati, Ohio, for debtors.

Neal J. Weill, Cincinnati, Ohio, Asst. U.S. Trustee.

## DECISION ON MOTION FOR § 707(b) DISMISSAL

BURTON PERLMAN, Chief Judge.

This is a Chapter 7 consumer case. The U.S. Trustee filed a motion for an order dismissing the case for "substantial abuse" pursuant to 11 U.S.C. § 707(b).

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A).

The motion filed by the U.S. Trustee appears to be based upon the conclusion by movant that debtors are able to pay a substantial portion of their unsecured debts in a Chapter 13 plan. This conclusion is supported by an analysis of the schedules filed

by the debtors which shows that their current take-home pay exceeds their expenses by $664.00 per month; that their budget shows that they spend over $650.00 per month on food, though the husband and wife debtors are the only persons in the household; and they contribute $75.00 per month to charity. Debtors have listed total unsecured debt of $68,536.00, all of which is either department store or charge card purchases. Finally, debtors have a retirement account amounting to over $17,-000.00, as well as a 401k plan with a present value of over $7,500.00.

■ The matter came on for an evidentiary hearing. At the hearing, the only witness was debtor William Beles. In this joint case, both Beles and his wife are employed and their income figure is a joint one. Beles testified that their substantial unsecured indebtedness which they seek to discharge began accruing in 1983 when he lost his job after 30 years with his employer. It took him seven months to find another job. It was during this period that the debt burden of debtors began to accumulate. William Beles then suffered a heart attack in 1985. As a result of this, the debt burden of debtors increased. In addition, in about 1985 debtors' daughter was divorced, and in 1988 she suffered from cervical cancer. They assisted her financially during this period.

William Beles testified that debtors did not use credit cards for luxuries, but only for necessaries, for living expenses, and ultimately when the debt burden of their credit cards got out of hand, they drew cash advances on some to make payments on others. Up to a year before filing, debtors had been able to keep up with their credit card payments, but during the last year the amount had grown to such an extent that they could only keep current on their cards by borrowing on other cards. Beles also testified that debtors do not own their own home. There is no evidence that debtors used their credit cards in order to maintain an exotic lifestyle.

No contrary evidence was offered by movant. The record before us, then, which we deem to consist of the schedules filed by debtors, together with the testimony of William Beles, shows nothing more than that these debtors have sufficient income to support a Chapter 13 plan, for there is nothing in the evidence presented to us which could be called "bad faith" in the bankruptcy filing. In *In re Deaton*, 65 B.R. 663, 665 (Bankr.S.D. Ohio W.D.1986), we held that the ability to fund a Chapter 13 plan in and of itself is not sufficient to establish the substantial abuse required by § 707(b). In order for there to be substantial abuse, something more, amounting to bad faith, must be present.

Since our decision in *Deaton*, *In re Krohn*, 886 F.2d 123 (6th Cir.1989) has been decided. We must consider whether that decision requires that we reconsider our *Deaton* holding, and reach a different conclusion in this case than is suggested by *Deaton*. In *Krohn*, the bankruptcy court dismissed debtor's bankruptcy case for substantial abuse pursuant to § 707(b). The Court of Appeals affirmed the bankruptcy court, agreeing that the evidence in that case supported a conclusion of bad faith. The Court of Appeals agreed that the facts, consisting of a financial situation which was not the product of any unforeseen or catastrophic event, together with an extravagant lifestyle, amounted to bad faith. Those facts do not have a counterpart here.

While the court in *Krohn* based its direct holding on the bad faith aspect of the case, in dictum the court said that: "Substantial abuse can be predicated upon either lack of honesty or want of need."

The court then went on to say:

Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. [*In re*] *Walton*, 866 F.2d [981] at 984–85 [ (8th Cir.1989) ]; [*In re*] *Kelly*, 841 F.2d [908] at 914–15 [ (9th Cir.1988) ] (collecting cases). That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.

Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn*, 886 F.2d at 126–27.

We note a further comment by the *Krohn* court that the question of § 707(b) dismissal is not to be linked to the question of funding a Chapter 13 plan, for dismissal may be in order even though no relief under the Bankruptcy Code is available to the debtor. *Id.* at 127.

■ A want of need test for substantial abuse is thus prescribed by the *Krohn* court, and that court suggests that the requisite want of need may exist where a debtor's disposable income "permits liquidation of his consumer debts with relative ease." *Id.* at 126. Courts tend to avoid basing a decision on the element of want of need alone, for bad faith is much easier to recognize than "relative ease" of liquidation of debt. *See, e.g., In re Wilson*, 125 B.R. 742, 744–45 (Bankr.W.D.Mich.1990) (debtor was less than honest in her statement of financial affairs and made "eve of bankruptcy" expenditures). In the present case, the evidence was that the debt burden of these debtors began to accumulate in William Beles' unemployment in 1983. It grew with the years through the misfortunes of his heart attack and the need to provide financial assistance to a daughter. Throughout this period debtors kept their heads above water and managed to support their debt burden. It was only within the year before filing their bankruptcy case that the burden became insupportable, ultimately leading to the filing of a Chapter 7 bankruptcy case in 1991 in an effort to get out from under that burden which was now threatening to consume their lives. There is no evidence of eve of bankruptcy extravagance, and it is to be noted that notwithstanding that this is a Chapter 7 case, none of their creditors have asserted that the debts owed them were fraudulently procured. These debtors are in their mid-50's, have made but modest provision for retirement, and we cannot say under these circumstances that they could liquidate their debts "with relative ease."

Accordingly, the motion will be denied.