*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0053P (6th Cir.)
File Name: 04a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

In re: WILLIAM M. BEHLKE
and DINA E. BEHLKE,

　　　　　　　*Debtors,*

———————

WILLIAM M. BEHLKE and
DINA E. BEHLKE,

　　　　　　　*Appellants,*

　　　*v.*

SAUL EISEN, United States
Trustee,

　　　　　　　*Appellee.*

No. 02-4306

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Akron.
No. 01-53608—Marilyn Shea-Stonum, Bankruptcy Judge.

Argued: January 28, 2004

Decided and Filed: February 20, 2004

Before: BOGGS, Chief Circuit Judge; GUY, Circuit
Judge; HOOD, District Judge.*

———————

**COUNSEL**

**ARGUED:** Stephen D. Hobt, Cleveland, Ohio, for
Appellants. P. Matthew Sutko, DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:**
Stephen D. Hobt, Cleveland, Ohio, for Appellants.
P. Matthew Sutko, DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee.

———————

**OPINION**

———————

RALPH B. GUY, JR., Circuit Judge. Debtors, William M.
and Dina E. Behlke, appeal from the decision of the
Bankruptcy Appellate Panel (BAP) affirming the bankruptcy
court's order granting the Trustee's motion to dismiss this
voluntary Chapter 7 bankruptcy petition for "substantial
abuse" under 11 U.S.C. § 707(b). Section 707(b) provides
that the bankruptcy court, on its own motion or the motion of
the United States Trustee, "may dismiss a case filed by an
individual debtor under this chapter whose debts are primarily
consumer debts if it finds that the granting of relief would be
a substantial abuse of the provisions of this chapter. There
shall be a presumption in favor of granting the relief
requested by the debtor."

The debtors argue that the bankruptcy court erred in
deciding to include 401K contributions as "disposable

———————

*The Honorable Denise Page Hood, United States District
Judge for the Eastern District of Michigan, sitting by designation.

income" for purposes of determining the debtors' ability to pay and in concluding that there was substantial abuse warranting dismissal under § 707(b). The debtors also argue that the BAP incorrectly applied an abuse of discretion standard in reviewing the bankruptcy court's decision. After a review of the record and the applicable law, we affirm the bankruptcy court's decision.

## I.

Debtors filed a voluntary petition in bankruptcy under Chapter 7. The Trustee filed a motion to dismiss the case under § 707(b), arguing that to grant the debtors a Chapter 7 discharge in this "no asset" case would constitute a substantial abuse because the debtors have disposable income with which to pay their creditors. The parties stipulated to the underlying facts at the time of the hearing on the motion. On April 4, 2002, the bankruptcy court issued its decision setting forth the stipulated facts, the applicable law, and the reasons for finding that the Trustee met its burden of demonstrating that "these debtors are not 'needy' and that granting them a Chapter 7 discharge would be a 'substantial abuse' of the bankruptcy system."

There is no dispute concerning the stipulated facts, which the bankruptcy court set forth as follows:

1. In December 1995, William Behlke was about to become a partner in a large law firm in California at which he had been practicing for six years.

2. Mr. Behlke left California and followed his then wife (now his ex-wife), Karen, to Ohio in an effort to save his marriage.

3. Because he moved to Ohio, Mr. Behlke lost his position in California. Mr. Behlke spent the next 13½ months out of work, first working to obtain a

license to practice law in Ohio and then searching for employment.

4. In February 1997, Mr. Behlke obtained employment with Rubbermaid in its Office of Corporate Counsel.

5. The dissolution of the marriage between William and Karen Behlke became final on April 8, 1998. William and Karen Behlke had one child from their marriage whose custody they now share. William Behlke pays child support of $653.00 per month.

6. In March 1999, Rubbermaid merged with Newell Corporation to form Newell Rubbermaid, Inc. Seven attorney's jobs at Rubbermaid were eliminated leaving William Behlke as the only attorney in Rubbermaid's Office of Corporate Counsel. Newell retained its staff of four in-house attorneys in its offices in Freeport, Illinois, including the general counsel for Newell Rubbermaid, Inc. Mr. Behlke's employment at Newell Rubbermaid appears currently steady, though the possible early retirement of general counsel for Newell could signal an attempt to consolidate the office of general counsel at Newell.

7. In January 1999, Dina Behlke (then Dina Christopher) left her employment as a paralegal and began Mobile P.I. Mobile P.I. is a business which is employed (now exclusively) by the law firm of Friedman, Domiano & Smith to go to the homes of their various potential personal injury clients throughout northern Ohio and obtain the client's medical releases and signatures upon retainer agreements. If Mrs. Behlke obtains the requested signatures, Mobile P.I. is paid a flat fee for Mrs. Behlke's services. If not, Mobile P.I. receives no compensation. Mobile P.I. is not reimbursed for Mrs. Behlke's mileage or expenses. During the

years 2000 and 2001, Ms. Behlke traveled throughout Medina, Cuyahoga, Summit, Stark, Trumbull, Portage, Mahoning, Wayne, Carroll, Holmes, Geauga, Columbiana, Tuscarawas, Ashland and Richland counties for work on behalf of Mobile P.I.

8. William and Dina Behlke were married on December 21, 1999.

9. On September 12, 2001, Mr. and Mrs. Behlke initiated this joint, voluntary chapter 7 bankruptcy. At the time of filing, the Behlkes owed a total of $163,944.00 in unsecured nonpriority debt which is "consumer" in nature. Of that amount, $30,140.00 is for a student loan debt owed by William Behlke.

10. The remaining $133,804.00 of unsecured nonpriority debt that was owed at the time of the bankruptcy filing is from various credit card accounts of both William and Dina Behlke.

11. According to the debtors' records, on December 31, 1998, debtors owed between them a total of $60,211.80 in credit card debt, which debt was mostly incurred between 1996 and early 1998 and primarily owed by William Behlke. On December 31, 1999, debtors' credit card debt totaled $100,353.00. On December 31, 2000, debtors owed a total of $124,437.72 in credit card debt.

12. Debtors' net monthly income totals $4,923.00 and their net monthly expenses total $4,749.00.

13. Debtors' Schedule I – Current Income of Individual Debtor(s) shows a voluntary monthly contribution of $460.00 to William Behlke's employer sponsored 401K plan.

14. Debtors' gross income for 1999 was $93,116.00 and their gross income for 2000 was $93,036.00.

15. For tax year 2000, debtors received an income tax refund of $2,313.00.

16. Debtors are eligible for relief under chapter 13 of the Bankruptcy Code.

There was no dispute that the debts in this case were primarily unsecured consumer debts.

As the bankruptcy court observed, this court has determined that substantial abuse can be predicated on a showing of *either* a lack of honesty *or* a want of need. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). The Trustee did not rely on a lack of honesty, but maintained that the debtors were not "needy." Examining this question, the bankruptcy court found that the voluntary 401K contributions should be included in disposable income; that, including those contributions, debtors had an ability to pay out of future income; and that, taken with the other *Krohn* factors, discharge in this case would be a substantial abuse of the bankruptcy system. The BAP affirmed on October 10, 2002, and this appeal followed.

## II.

### A. Standard of Review

"We independently review the decision of the bankruptcy court that comes to us by way of appeal from a Bankruptcy Appellate Panel." *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 341 (6th Cir. 2003). The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir. 1994); *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998). Mixed questions are to be

separated into their component parts and reviewed under the appropriate standard. *Mayor of Baltimore v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 527 (6th Cir.), *cert. denied*, 537 U.S. 880 (2002). "Finally, the bankruptcy court's equitable determinations are reviewed for an abuse of discretion." *Id*. (citations omitted).

Debtors contend that the BAP erred in applying an abuse of discretion standard to the ultimate question of whether there was substantial abuse warranting dismissal, without resolving the question of whether the issue should be reviewed *de novo* or for an abuse of discretion. While it appears that the BAP actually concluded that it would affirm under either standard, ours is an independent review of the bankruptcy court's decision.

Several circuits have stated, albeit without discussion or analysis, that whether the facts as found by the bankruptcy court constitute substantial abuse is a question of law that is to be reviewed *de novo. See Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 803 (10th Cir. 1999); *Kornfield v. Schwartz (In re Kornfield)*, 164 F.3d 778, 783 (2d Cir. 1999); *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1, 3 (1st Cir. 1998); *Green v. Staples (In re Green)*, 934 F.2d 568, 570 (4th Cir. 1991). On the other hand, the Eighth Circuit BAP has held that dismissals for substantial abuse are to be reviewed for abuse of discretion. *In re Nelson*, 223 B.R. 349, 352 (8th Cir. BAP 1998).

While this court has not specifically considered the question of the appropriate standard for reviewing dismissals under § 707(b), we have concluded that a decision to dismiss "for cause" under § 707(a) will be reversed only for an abuse of discretion because it is an equitable determination. *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir. 1991). In discussing the purposes of § 707(b), the court in *Krohn* indicated that dismissal for substantial abuse is also an equitable determination. *Krohn*, 886 F.2d at 126 (§ 707(b) gives discretion to dismiss for abusive filing and allows

bankruptcy courts to deal equitably with such debtors). In addition, both § 707(a) and § 707(b) provide that the bankruptcy court "may" dismiss and this permissive language leads to the inevitable conclusion that the decision whether to dismiss either "for cause" or "substantial abuse" is discretionary. As a result, we conclude that the ultimate question of whether to dismiss for substantial abuse under § 707(b) is reviewed for abuse of discretion. *See also AMC Mortgage Co. v. Tenn. Dept. of Revenue (In re AMC Mortgage)*, 213 F.3d 917, 920 (6th Cir. 2000) (dismissal for cause under 11 U.S.C. § 1112(b) is reviewed for abuse of discretion).

**B.　Dismissal under § 707(b)**

Congress chose not to define the term "substantial abuse," leaving it to the courts to decide how it should be determined. Although a number of circuits have addressed this question, this court is bound by the approach set forth in *Krohn*, where we explained that:

Those courts which have reviewed the legislative history, have generally concluded that, in seeking to curb "substantial abuse," Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor. *See [In re] Walton*, 866 F.2d [981, 983 (8th Cir. 1989).] In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. *See* 4 *Collier [on Bankruptcy]* ¶ 707.07, at 707-20 [(15th ed. 1989)]. Substantial abuse can be predicated upon either lack of honesty or want of need.

*Krohn*, 886 F.2d at 126. After identifying some factors relevant to ascertaining a debtor's honesty, the *Krohn* court went on to explain the factors relevant to determining whether a debtor is "needy"; first among them being the debtor's "ability to repay his debts out of future earnings." *Id.* Significantly, the court expressly held that this factor "alone may be sufficient to warrant dismissal." *Id.* The court explained this and other factors as follows:

> For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Id.*

Debtors argue, in disregard of *Krohn*, that it was error for the bankruptcy court to find substantial abuse in the absence of evidence of unfair dealing or bad faith on their part. Debtors rely on *In re Browne*, 253 B.R. 854, 856 (Bankr. N.D. Ohio 2000), for the proposition that an ability to pay, without more, is an insufficient basis to dismiss for substantial abuse. Not only does *Browne* inaccurately cite *Krohn* for this proposition, but *Krohn* clearly holds that the ability to pay may be but is not necessarily sufficient to warrant dismissal for substantial abuse. *See In re Austin*, 299 B.R. 482, 486 (Bankr. E.D. Tenn. 2003) (discussing *Browne*). Although debtors rely on decisions from other circuits to the contrary, we are bound by *Krohn*. *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). The

bankruptcy court committed no legal error in finding substantial abuse absent a finding of "dishonesty."

### 1.   Ability to Pay

One way courts determine a debtor's ability to pay is to evaluate whether there would be sufficient disposable income to fund a Chapter 13 plan. *See Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1288 (8th Cir. 1997); *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 914 (9th Cir. 1988). "[D]isposable income" is income "received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2). The debtors do not contest any of the bankruptcy court's factual findings underlying the conclusion that, without including the 401K contribution, their monthly income exceeded their monthly expenses by $174.00.[1] Rather, they claim it was error for the bankruptcy court to include Mr. Behlke's voluntary 401K contribution of $460.00 per month as disposable income for purposes of determining their ability to pay their creditors out of future income.

Our starting point must be this court's holding in *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775, 777-78 (6th Cir. 1995), that the debtor's voluntary repayment of loans to her ERISA-qualified profit sharing account should be treated as part of the disposable income in the bankruptcy estate.[2] Affirming the rejection of a Chapter 13 plan, the court held that: "This expenditure may represent prudent financial planning, but it is not necessary for the 'maintenance

---

[1] Debtors' monthly expenses include a child support payment of $635.00 for Mr. Behlke's minor child.

[2] The court noted that the debtor's beneficial interest in the ERISA account was exempted from the bankruptcy estate. *Id.* at 777.

or support' of the debtors." *Id* at 777. The court explained its rationale as follows:

> It is unfortunate that Mrs. Harshbarger's expected pension benefits may be diminished by a future setoff against the unpaid portion of her obligation to the ERISA-qualified account. However, this consideration does not alter the result under the bankruptcy laws. In these circumstances, "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D. Ohio 1991).

*Id.* at 778. We agree with those courts that have held this reasoning is equally applicable to a debtor's voluntary contributions to a 401K or other retirement plan. *See, e.g., Anes v. Dehart (In re Anes)*, 195 F.3d 177, 180-81 (3d Cir. 1999) (loan repayments are in effect contributions to the debtor's retirement account and are disposable income for purposes of a Chapter 13 plan). In fact, a number of bankruptcy courts have included voluntary 401K contributions as disposable income in considering whether dismissal was warranted for substantial abuse under § 707(b). *See Austin*, 299 B.R. at 486-87 (voluntary retirement contributions constitute disposable income in considering dismissal under § 707b) (citing cases); *In re Keating*, 298 B.R. 104, 110-11 (Bankr. E.D. Mich. 2003) ("There is an inherent unfairness in permitting a debtor to pay himself by funding his own retirement account while paying creditors only a fraction of their just claims."); *In re Heffernan*, 242 B.R. 812, 818 (Bankr. D. Conn. 1999) (overwhelming consensus among bankruptcy courts that debtor's voluntary payment into pension, savings, or 401K-type plan is not a reasonably necessary expenditure) (citing cases). *But see In re Mills*, 246 B.R. 395, 401-02 (Bankr. S.D. Cal. 2000) (allowing a modest contribution to 401K to be excluded from

disposable income where the debtor is near the age of retirement and has no other retirement savings plan).

Without arguing that voluntary retirement contributions can never be disposable income, debtors claim it was error for the bankruptcy court to find that the 401K contributions in this case were not reasonably necessary for the maintenance and support of the debtors or their dependent. In particular, they emphasize that they had only $48,200 in retirement savings between them at the time of the bankruptcy filing.

After noting that the debtors had excess income aside from the 401K contributions, the bankruptcy court made the following findings:

> Although saving for retirement is, no doubt, important to these debtors, their Schedule B – Personal Property reflects accumulated retirement savings of $48,200. In addition to these retirement savings, debtors' Schedule B also lists stock options on 1,025 shares of Newell Rubbermaid stock. Although these stock options did not appear to have any immediate value based upon the stock trading price on the date debtors filed their petition, there has been no evidence to indicate that such options are not now or could not become valuable in the future. These debtors also own the home which serves as their primary residence. On their Schedule A – Real Property, debtors listed the property as having a current market value of $135,000.00 with a first mortgage of $124,432.00 and there is no indication in debtors' Schedules that they are behind on any mortgage payments. Moreover, there has been nothing to indicate that the value of this real property will not appreciate.

(Footnote omitted.) Thus, applying *Harshbarger* and finding that the debtors had accumulated retirement savings as well as other personal and real property of potentially significant future value, the bankruptcy court found that the monthly 401K contribution, which is equal to 6% of Mr. Behlke's

gross income, should be included as disposable income for purposes of determining the debtors' ability to pay their creditors out of future earnings.

We agree completely and find no clear error in the bankruptcy court's finding that the 401K contribution in this case was not reasonably necessary to the maintenance and support of the debtors or their dependent and that it should be included as disposable income.

## 2. Substantial Abuse

Turning to the ultimate question of whether there was substantial abuse warranting dismissal under § 707(b), it is apparent from even a cursory examination of the bankruptcy court's decision that its finding of substantial abuse rested not only on the finding that the debtors had an ability to pay their creditors out of future income to the tune of $634.00 per month, but also on consideration of the other factors relevant to determining whether the debtors were "needy." The bankruptcy court explained as follows:

If debtors' income and expenses remain relatively the same (and there was no argument or evidence from either party to suggest otherwise) and if Mr. Behlke's 401K contribution were added to debtors' monthly income and then applied toward the payment of debts through a chapter 13 plan, debtors could pay approximately 14% of their debts over 36 months. If payments were extended over a 60 month period, debtors could pay approximately 23% of their debts. *See* 11 U.S.C. § 1322(d) and § 1325(b)(1)(B). . . . The Court further finds that debtors' ability to pay at least a 14% dividend to their creditors without having to alter their budgeted expenses (other than a contribution to a retirement savings plan) lends to a finding that these debtors can repay debts out of future earnings through the funding of a chapter 13 plan. That these debtors may only be able to pay their creditors 14 cents on the dollar does not act to change the Court's

analysis and finding because, if it did, debtors could be encouraged to amass debt prior to filing chapter 7.

In addition to evaluating ability to pay debts out of future income, other factors to be taken into account to determine if debtors are "needy" include whether debtors enjoy a stable source of income, whether debtors' expenses can be reduced significantly without depriving them of adequate food, clothing, shelter and other necessities and whether debtors' financial situation is the result of an unforseen catastrophic event. *In re Krohn*, 886 F.2d at 126-28. Mr. Behlke has been employed in the same position since February 1997. Although debtors allude to a possibility that Mr. Behlke's employment could be eliminated through consolidation of Newell Rubbermaid's office of general counsel, the only evidence actually before the Court demonstrates that Mr. Behlke's employment is secure. As for Mrs. Behlke, the evidence before the Court demonstrates that her income (although minimal) has, over the past 3 years, been increasing. This increase, combined with the fact that Ms. Behlke possesses paralegal skills which could enable her to obtain other more highly paying employment, leads the Court to find that these debtors do enjoy a stable source of income.

The United States Trustee does not allege that these debtors['] expenses could be reduced and, upon review of debtors' Schedule J – Current Expenditures of Individual Debtor(s), it does not appear that the Behlkes' lifestyle is extravagant. However, it also does not appear that their lifestyle is an austere one as their monthly expenses include $1,121.00 for a mortgage payment, $500.00 for food, $150.00 for recreation and $666.84 for payments on two automobiles. Moreover, there is no evidence before the Court to indicate that the Behlke[s'] bankruptcy filing was precipitated upon a catastrophic or an unforeseen event. *Cf. In re Fessler*, 168 B.R. 622 (Bankr. N.D. Ohio 1994) (loss of employment of both

breadwinners in household constitutes calamity); *In re Shepherd*, 147 B.R. 422 (Bankr. N.D. Ohio 1992) (debtor forced into bankruptcy due, in part, to psychological trauma of catastrophic events including (1) charge of rape against debtor's live-in companion, (2) murder of debtor's brother[,] (3) conviction of murder against debtor's other brother and (4) death of debtor's close personal friend). Instead, it appears that Mr. and Mrs. Behlke filed for bankruptcy to escape the burden of exorbitant but self-imposed credit card debt.

(Footnote omitted.)

Debtors do not challenge the factual findings reflected in the above analysis, but seem to argue that there was no substantial abuse because they only have an ability to repay 14% over three years (for a total of $22,824) or 23% over five years (for a total of $38,040). As the debtors themselves point out, however, there is no "cutoff" or bright-line test under which an ability to pay a certain percentage over a three-to-five year period would or would not be substantial abuse regardless of other circumstances.[3] The fact that bankruptcy courts have found no substantial abuse in cases where there was an ability to repay only 5% or 11%, as well as cases in which there was an ability to repay as much as 35% or 42% does not undermine the bankruptcy court's determination in this case. *See In re Hampton*, 147 B.R. 130 (Bankr. E.D. Ky. 1992) (5%); *In re Martens*, 171 B.R. 43

---

[3]Debtors trace the legislative history of several bills that preceded the adoption of § 707(b), including a Senate Judiciary Committee report on a failed bill that would have adopted a "future income test" for substantial abuse. The report explains that, under such a test, if a debtor could pay no more than 25% of the debts over a three-to-five year period, the debtor would not have substantial debt paying ability and would be eligible for Chapter 7 relief. However, debtors concede that such a test was not adopted in § 707(b).

(Bankr. N.D. Ohio 1994) (11%); *In re Beles*, 135 B.R. 286 (Bankr. S.D. Ohio 1991) (35%); *In re Butts*, 148 B.R. 878 (Bankr. N.D. Ind. 1992) (42%). Ability to pay alone may be but is not necessarily sufficient to warrant dismissal. As the Trustee observes, other factors weighed against dismissal in *Beles* and *Butts* despite an ability to pay.

Reviewing for abuse of discretion, we may reverse only if we are left with a definite and firm conviction that the bankruptcy court committed a clear error in judgment. *Eagle-Picher Indus.*, 285 F.3d at 529. "'The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'" *Id.* (citation omitted). When the debtors' ability to pay is taken with the other relevant factors, we can find no abuse of discretion in the determination that the debtors were not "needy" and the case should be dismissed for substantial abuse.

**AFFIRMED.**[4]

---

[4]The United States Trustee argues that the debtors' ability to pay is even higher than the bankruptcy court found because the debtors' tax return of $2,313 for the year 2000 represented over-withholding and should have been divided by 12 and an additional $192.75 included as disposable income. *See, e.g.*, *In re Hutton*, 158 B.R. 648, 649 (Bankr. E.D. Ky. 1993) (monthly net pay was arguably more because of over-withholding for income tax). Including this amount and similar expected tax refunds would have increased the percentage the debtors' could repay to 18% over three years (for a total of $29,763) or 30% over five years (for a total of $49,605). Because we are satisfied that the bankruptcy court did not abuse its discretion in dismissing the debtors' Chapter 7 case for substantial abuse, we need not decide whether there is sufficient basis in this record to find it was clear error to have disregarded the debtors' income tax refund in this case.