**In re Sidney Lund WEST, Joy Alesia West, Debtors.**

**No. 04–64750.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 7, 2005.

Matthew J. Thompson, Columbus, OH, for Debtors.

Susan L. Rhiel, Columbus, OH, Chapter 7 Trustee.

Kristopher E. Aungst, Asst. U.S. Trustee, Columbus, OH, Office of U.S. Trustee.

### OPINION AND ORDER SUSTAINING MOTION TO DISMISS

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the motion of the United States Trustee

("UST") seeking to dismiss this case pursuant to 11 U.S.C. § 707(b). The debtors opposed the motion and the Court heard the matter.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A).

The UST's motion is brought pursuant to 11 U.S.C. § 707(b) which states:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

It is this section which forms the basis for the motion and the Court's decision.

### FINDINGS OF FACT

These debtors have annual joint gross income of approximately $92,724. After deductions for taxes and certain insurance premiums, their net monthly income is $5,719. Mr. West earns $56,724 yearly as an employee in the data processing operations of Franklin County, Ohio. Mrs. West earns $36,000 yearly as an employee of the State of Ohio in the office of the secretary of state. The Wests have no dependents. They filed their petition under chapter 7 of the Bankruptcy Code on September 17, 2004, and their debts are primarily consumer debts. The trustee in bankruptcy has determined that the Wests have no assets available to distribute to their creditors.

The debtors live in Chillicothe, Ohio. They work in Columbus. That requires them to drive approximately 110 miles to and from work each day. They own two cars—1993 and 2003 Mitsubishis. The 1993 vehicle is paid for, but is not operable. The 2003 vehicle is liened for an amount more than its value. They also lease a 2001 Audi for which they incur a monthly lease charge of $520.00. They own a home in Chillicothe which was purchased in 1991. Since that time, the first mortgage against that property has been refinanced several times, most recently only one month prior to their bankruptcy filing. Presently, the mortgage carries an interest rate of 7.49% payable at $1153 each month, and has a balance owed of approximately $145,000. The monthly payment may include real estate taxes. There also is a second mortgage in the amount of $14,000. The home is valued by the debtors at $147,000.

The debtors' scheduled secured debts include the two mortgages on their home and the obligation for the 2003 vehicle. They owe a small amount of priority debt for city taxes and scheduled unsecured debts of $19,462. Of that unsecured total, $12,000 represents a deficiency balance from a previously owned vehicle which was repossessed. They also have 24 months remaining on the monthly lease for the 2001 vehicle. When they last refinanced their mortgage in August of 2004, the debtors paid off certain outstanding unsecured liabilities.

From their monthly net income of $5719, the debtors have scheduled or the testimony has established the following expenses:

| | | |
|---|---|---|
| Mortgage payments (includes real estate taxes and insurance) | (1st) | $ 1203 |
| | (2nd) | 342 |
| Utilities (heat and electricity) | | 210 |
| Water and sewer | | 40 |
| Telephone | | 95 |
| Cable TV | | 60 |
| Home maintenance | | 50 |
| Food | | 750 |

| | |
|---|---:|
| Internet | 42 |
| Clothing | 200 |
| Laundry and drycleaning | 100 |
| Medical/dental | 100 |
| Transportation (gasoline and repairs) | 500 |
| Car lease | 520 |
| Car payment | 242 |
| Recreation/entertainment | 200 |
| Car and health insurance | 301 |
| Parking | 110 |
| Personal care | 140 |
| Charitable contributions (tithe) | 500 |

After all expenses totaling $5705 are considered, the debtors have $14 remaining.

## ISSUES OF LAW

▮ Section 707(b) of the Bankruptcy Code was enacted in 1984 as part of the Federal Judgeship Act of 1984 (codified as amendments to various provisions of Titles 11 and 28, United States Code.) The purpose for the amendment to section 707(b) was to limit the chapter 7 bankruptcy remedy for consumer debtors to those debtors who are honest and who need the remedy to preserve a decent standard of living for themselves and their dependents. *See* S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983). By this enactment, persons who have primarily consumer debts and who have financial resources in excess of their basic needs would be forced to seek relief under a reorganization chapter or to otherwise attempt to repay their creditors.

There are two significant cases in this circuit interpreting section 707(b)—*In re Krohn*, 886 F.2d 123 (6th Cir.1989) and *In re Behlke*, 358 F.3d 429 (6th Cir.2004). *Krohn* and *Behlke* first establish that a chapter 7 case may be dismissed if a debtor has engaged in culpable behavior (such as the nondisclosure of assets or expenses), or has engaged in certain prepetition actions. Culpable behavior may also include actions which, although disclosed, make it inequitable to grant a discharge under chapter 7 to the debtor. Where the level of such behavior is offensive, but perhaps cannot appropriately be addressed under § 727 of the Bankruptcy Code, a motion under section 707(b) may force either dismissal of the case or a voluntary conversion to a reorganization chapter. *Krohn* at 126.

▮ More relevant to this case, however, *Krohn* and *Behlke* also establish that a chapter 7 case may be dismissed even without evidence of culpable behavior if debtors do not need chapter 7 relief. Such lack of need will be evidenced by financial resources which should be adequate to avoid bankruptcy if the debtors were either more prudent in their lifestyle or more disciplined in their financial choices. In such cases, the Bankruptcy Court is asked to balance debtors' financial resources, reasonable expense requirements, and efforts to manage debt with a general threshold equitable requirement of need. *Krohn* at 126. Despite observations of some commentators that future income was not intended to drive this analysis (See, e.g., dissent in *In re Walton*, 866 F.2d 981 (8th Cir.1989)), the Court of Appeals for the Sixth Circuit has adopted future income and disposable income as important factors in determinations under 11 U.S.C. § 707(b). *Behlke*, 358 F.3d 429.

▮ The test required is difficult to administer. The bankruptcy court is required to conduct such an analysis, however, upon request by the United States Trustee. In essence, debtors seeking to defeat a motion to dismiss under § 707(b) in this circuit must demonstrate to the court that the totality of their circumstances establish a need for relief under chapter 7 and that they are making the best effort they can to deal with their financial problems, consistent with their existing and projected future disposable income. The statute includes a presumption in favor of granting the relief under chapter 7 if the balance is close.

The factors which cause this case to come up for such review include the debtors' higher than average incomes, the relatively small amount of their unsecured debt, and the abnormality of certain of their monthly expenses. The existence of income in excess of their stated expenses and their eligibility for chapter 13 relief are also factors to be considered. *Krohn* at 126; *Behlke* at 434. In essence, the *Krohn* and *Behlke* opinions require the bankruptcy system to impose discipline and restraint on the lifestyle and spending choices of more affluent consumer debtors before they can claim an entitlement to relief under chapter 7.

### CONCLUSIONS OF LAW

■ Under any standards, these debtors have income in excess of that disclosed by typical chapter 7 debtors. Their net monthly income of $5719 after taxes and certain insurance, exceeds that of typical chapter 7 joint debtors.

The Court has considered certain of the debtors' monthly expenses which the UST has challenged as excessive. Specifically, the UST maintains that the debtors should spend only $55 each month for telephone service, $500 for food, $100 for clothing, $300 for transportation and $100 for recreation. Testimony established the necessity for greater than average transportation expenses because of the distance the debtors travel to work each day and to church on Sunday. No one suggested or offered any car pooling option and, therefore, the Court will not consider that option. Although the debtors should find ways to decrease that expense, no more than a $75 reduction appears likely so long as each debtor drives separately. The Court also finds that the additional telephone expense was justified. That finding leaves for consideration potential reductions of $100 for clothing, $250 for food and $100 for recre-

ation. The total reductions of $525 appear to be reasonable and feasible. As adjusted then, the debtors' reasonable monthly expenses would total approximately $5200. Even if all such reductions cannot be achieved, an expected surplus of $300—$500 each month could reasonably be devoted to debt repayment. If the debtors were in a chapter 13 case, those funds when combined with the resources currently devoted to secured debts and lease payments, could yield a meaningful dividend to their unsecured creditors even after the payment of secured claims, lease payments, and administrative expenses.

It is difficult for this Court to determine what is "substantial abuse" for purposes of § 707(b). When debtors are honest, but spend more than someone else might on certain expenses, is that substantial abuse? If they choose to live in a location that requires them to incur high travel expenses for their daily commute, is that substantial abuse? If they lack insight into the causes for their financial troubles, is that substantial abuse? If the intricacies and real costs for refinancing a mortgage are not within their understanding, is that substantial abuse? How stable are their jobs required to be to assess their future resources? These are the dilemmas forced upon the bankruptcy system by these 707(b) motions and by a culture which not only encourages consumption, but requires it to drive the economy. What level of "surplus" is required to defeat the presumption granted by the statute in favor of the relief sought?

Given the binding case law in this circuit and weighing the totality of circumstances in this case, however, the Court finds that granting chapter 7 relief to these debtors would be a substantial abuse. The Court finds no dishonesty in the debtors' schedules or testimony. They need, however, to better match their spending habits with

the reality of their economic resources. They also need to attempt to understand why they are not living within their above-average means and, perhaps, to make lifestyle adjustments to achieve that goal. Even though Mrs. West testified that she may lose her job in the next election cycle, she may find another similar position. These debtors were unable to point to any catastrophic events in their lives or any unusual circumstances which cause them to be unable to support themselves on an annual income of almost $93,000. The amount of their unsecured debt is low enough (probably because of their mortgage refinancing and second mortgage) that the savings they could achieve by merely living more frugally would enable them to repay a meaningful proportion of their unsecured debt. Section 707(b) has been interpreted in a manner that requires this Court to strongly encourage that practice.

Accordingly, the debtors' chapter 7 case will be dismissed unless they convert to chapter 13 in the next twenty (20) days. It is their choice whether they will deal with their debts under chapter 13, in a state court proceeding, or on their own. They will not, however, proceed to discharge in this chapter 7 case.

Based upon the foregoing, the UST's motion seeking to dismiss this case is, hereby, sustained. The debtors' chapter 7 case will be dismissed after twenty (20) days unless they take other action consistent with these findings.

**IT IS SO ORDERED.**