**In re Richard/Sharon PEOPLES,
Debtors.**

No. 05–39429.

United States Bankruptcy Court,
N.D. Ohio.

Feb. 28, 2006.

Howard B. Hershman, Toledo, OH, for debtors.

Ericka S. Parker, Toledo, OH, trustee.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This matter comes before the Court after a Hearing on the Motion brought by the United States Trustee to Dismiss the Debtors' Case pursuant to 11 U.S.C. § 707(b). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly review the evidence and applicable law. The Court has now had this opportunity and finds, for the reasons herein stated, that the weight of the evidence supports the Motion of the United States Trustee.

### FACTS

The Debtors, Richard and Sharon Peoples (hereinafter referred to collectively as the "Debtors"), have sought relief under Chapter 7 of the United States Bankruptcy Code. At the time they filed their petition in bankruptcy, Richard Peoples was 77 years of age; Sharon Peoples was 65 years of age. They have no dependents.

In filing their petition, the Debtors set forth $363,026.00 in total liabilities. Of this liability, $321,651.00 was comprised of secured claims, including a first and second mortgage on the Debtors' residence totaling together $193,630, and security interest of $120,000.00 held against a "Safari" recreational vehicle. On these particular secured interests, the Debtors reaffirmed on both of the mortgages encumbering their residence, but have since surrendered their recreational vehicle which they listed in their petition as being undersecured by $45,000.00. Minus a small priority claim, the remaining unsecured debt, totaling of $41,375.00, was comprised of consumer credit-card obligations.

The Debtor, Richard Peoples, is a doctor of orthopedic medicine. Since July of 1995, he has worked as an independent contractor with a company in which his salary is calculated based upon 55% of total billing receipts. At the time he filed his bankruptcy petition, Dr. Peoples set forth a gross monthly salary of $13,500.00 of which $2,000.00 is derived from Social Security Benefits. From this, the Debtor

deducts $4,000.00 for estimated taxes and $2,000.00 for court-ordered alimony, leaving Dr. Peoples approximately $7,500.00 in net monthly income.

The Co–Debtor, Sharon Peoples, is a Registered Nurse. In this position, she earns $2,654.00 per month, which after accounting for mandatory deductions, results in net monthly income of $1,917.00. When added to her husband's salary, the Debtors' net monthly income totals just over $9,400.00. Against this income, the Debtors set forth monthly expenses of $7,935.00, inclusive of a $1,486.00 payment for their recreational vehicle.

As to assets, the Debtors set forth that, at the time of the Hearing held in this matter, they had just one asset of any significance: their home, which they listed as having a value of $199,000.00, but which is fully encumbered. Furthermore, according to the Debtors, they do not have anything in the nature of assets which are traditionally used for retirement such as 401(k)'s and the like.

## DISCUSSION

■ The Motion of the United States to Dismiss is brought pursuant to 11 U.S.C. § 707(b) which provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter.

As a determination of dismissal under this section directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)/(O); 1334.

■ Section 707(b) contains three overall elements: (1) the debtor must be an individual; (2) the debts must be primarily consumer debts; and (3) granting relief to the debtor under Chapter 7 would be a "substantial abuse." As it regards the applicability of these elements, § 707(b) provides that "[t]here shall be a presumption in favor of granting the relief requested by the debtor." At the Hearing held in this matter, the applicability of the first two elements was not controverted, with the arguments of the Parties focused solely on the third element of § 707(b): the existence of "substantial abuse."

■ Section 707(b) was added by the Congress of the United States in 1984 in response to concerns that some debtors who could easily pay their creditors might resort to chapter 7 to avoid paying their obligations. To this end, § 707(b) seeks to limit the use of the bankruptcy process to only those debtors truly in need of relief, thereby helping to preserve the integrity of the process. *See, e.g., In re Duncan,* 201 B.R. 889 (Bankr.W.D.Pa.1996). With this aim in mind, the Sixth Circuit Court of Appeals, in the case of *In re Krohn,* first addressed the element of "substantial abuse" under § 707(b), holding that it may "be predicated upon either a lack of honesty or want of need." 886 F.2d 123, 126 (6th Cir.1989). Later, in the case of *Behlke v. Eisen (In re Behlke),* the Sixth Circuit clarified this holding, making it clear that a lack of both "honesty" and "need" would constitute separate and independent sources for the dismissal of a case under § 707(b). 358 F.3d 429, 434–35 (6th Cir.2004). In this matter, the UST predicates its position for dismissal entirely on the latter ground: the Debtors' lack of "need" for Chapter 7 relief.

■ As opposed to the "honesty" component of § 707(b), a need's analysis is an inherently more objective test, focusing primarily on whether a debtor has the ability to "repay his debts out of future earnings." *In re Krohn,* 886 F.2d at 126. Thus, for example, the Sixth Circuit held that "a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease." *Id.* at 126. When looking to a debtor's ability to repay his debts out of future earnings, the question normally asked is whether the debtor has the ability to fund a Chapter 13 plan of reorganization. *Accord In re Behlke,* 358 F.3d at 435 ("One way courts determine a debtor's ability to pay is to evaluate whether there would be sufficient 'disposable income' to fund a Chapter 13 plan.").

In this way, the Debtors admit that, as things stand presently, they have the objective means by which to fund a Chapter 13 plan of reorganization: after factoring in the payment they formerly made on their recreational vehicle, the Debtors have at their disposal around $3,000.00 per month to put toward a Chapter 13 plan, more than enough to fully repay their unsecured debts even after accounting for any deficiency that might result for the surrender of the recreational vehicle. Rather, in arguing their "need" for Chapter 7 relief, the Debtors raise subjective considerations, setting forth in their brief to the Court:

> The single factor which makes the granting of a discharge in this case appropriate is the age of the debtors. Dr. Richard Peoples was 77 years old at the time the petition was filed. Sharon Peoples was 65 years old. It is plain from the schedules that the debtors could not maintain their household solely upon her earnings. If Dr. Peoples were a young man of 55 there would be no occasion to file a bankruptcy. If he were only 65 years old, he would most likely be able to complete a repayment plan under Chapter 13. In fact, in their initial consultations with counsel, when the prospect of a Chapter 13 proceeding was raised, debtors were concerned that Dr. Peoples, having already reached the average life span for an American male, might not survive the duration of his plan. Moreover, his advanced age, and the fact that he has been injured by virtue of falling on several occasions, makes it difficult for him to get back and forth to work and he ought not be working so much as he has in the past several years. This throws into question the stability of his income and, in part, demonstrates the need for a discharge.

(Doc. No. 15, at pg. 2 & 3).

■ In the end, a § 707(b) analysis is an equitable one, and rests upon the totality of the circumstances. A straight income and expense analysis therefore is not always appropriate in a § 707(b) analysis. As stated in *In re Behlke,* in "determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether [the debtor] is merely seeking an advantage over his creditors, or instead ... is 'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." 358 F.3d at 434. Thus, as the Debtors have done here by pointing to their respective ages, extraneous considerations should be considered when they are raised as an issue.

Yet, as a policy matter, it is hard to accept that age, alone, should be a dispositive factor. Besides smacking of prejudice, it is neither fair to the debtor nor the creditor. When there exists the ability to pay, creditors should not be denied pay-

ment simply because a debtor reaches a certain age; conversely, debtors should not be denied credit simply on the basis of their age. In this way, Toledo bankruptcy courts have approved Chapter 13 plans of reorganization for debtors much older than either of the Debtors are in this particular matter. *See, e.g., In re Betty M. Schiffler,* Case No. 04–36354 (J. Whipple) (plan approved while debtor was in her 80's); *In re Anna Catherine Billingsley,* Case No. 03–35745 (J. Whipple) (approving a plan of reorganization for a 97 year-old debtor).

At the Hearing held in this matter, however, Debtors' counsel further elaborated, explaining that what constituted the Debtors' "need" for Chapter 7 relief was not solely their age, but rather a combination of age along with Dr. Peoples' medical problems. In this regard, it was brought out at the Hearing that, besides the mobility problems explained above, Dr. Peoples suffers from various medical ailments related to being a diabetic. Moreover, according to Dr. Peoples, his medical problems related to the diabetes are chronic.

Courts have traditionally taken an illness or medical condition into account when conducting a § 707(b) examination. *See, e.g., In re Green,* 934 F.2d 568, 572 (4th Cir.1991) (listing an illness a factor for consideration). However, in *In re Krohn,* the Sixth Circuit, although setting forth a number of factors,[1] did not specifically mention a medical condition or illness as operating as a defense to a § 707(b) action. Instead, the Court in *In re Krohn* simply set forth that, when conducting a totality of the circumstances analysis under § 707(b), a bankruptcy court should con-

sider "whether the debtor enjoys a stable source of future income." 886 F.2d at 126.

While undoubtably this consideration paints with a broad stroke, and will cover a large spectrum of difficulties a debtor faces, including those related to age and health, it also follows that by focusing on the stability of a debtor's income, and not the underlying difficulty faced by the debtor, a medical condition will only become relevant if it has a close nexus with the debtor's income. For Dr. Peoples, this means that the pertinent question must be viewed as one of causation: will his medical conditions cause a decline in his health over the next three to five years—the length of a Chapter 13 plan—so as to render him incapable of producing a sufficient stream of income to fund a Chapter 13 plan?

Obviously, at any time this Court is called upon to predict the course of future events, speculation is involved. An assessment of claims, such as that raised by Dr. Peoples regarding his medical conditions, must therefore be based on probabilities, or the likelihood that the event will come to pass. A very good indicator in this regard is to trace past events to the present. *Berry v. Educ. Credit Mgmt. Corp. (In re Berry),* 266 B.R. 359, 364–65 (Bankr.N.D.Ohio 2000). And in this way, after giving the matter very thorough consideration, the Court simply finds it too uncertain that the medical problems Dr. Peoples' now faces will, in the near future, render the Debtors incapable of funding a Chapter 13 plan.

At the present time, Dr. Peoples is working, and no evidence was presented that his medical conditions would, at least

---

1. Other factors a court may also consider, as held by the Sixth Circuit in *In re Krohn,* include, whether there are state remedies with the potential to ease the debtor's financial predicament, the degree of relief obtain-

able through private negotiations, and whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities *Id.* at 126.

for the immediate future, prevent him from continuing to work. To the contrary, Dr. Peoples acknowledged that, while creating some difficulties, his medical conditions have not caused him to make any immediate arrangements to discontinue working. Also from a strictly evidentiary standpoint, the Court, while it does not question that Dr. Peoples has medical problems related to his diabetes, does not have before it any corroborating evidence. Thus, any assessment bearing on the severity of his conditions and his prognosis over the course of the next few years is much too speculative.

To be sure, past indicators do come into play. The uncontroverted evidence shows that Dr. Peoples' salary has diminished over the years, and hence it would stand to reason that this decline will continue. And when looked at in light of their respective ages, there is no question that the Debtors' window of opportunity to pay their obligations is not wide.

Yet, at the same time, the diminution in Dr. Peoples' salary has been gradual. Thus, if present trends continue, it would not appear that the Debtors will encounter in the near future a precipitance decline in their income so as to render them incapable of funding a Chapter 13 plan. In this regard, a couple of points are worth noting.

First, the testimony provided by Dr. Peoples revealed that the decline in his income was not solely related to his age/medical difficulties, but rather had, as a component, conditions related to his employer—specifically, his employer diluted Dr. Peoples' share of his patient pool. Yet, while not a positive turn of events, this particular setback would appear to be one that could be easily overcome given his marketable skills as a doctor of orthopedic medicine. That is, there is nothing to suggest that, if required to pursue other/additional employment, Dr. Peoples would not stand a high chance of success.

Second, it must be presumed that Mrs. Peoples, although not earning nearly the same salary as Dr. Peoples, has a stable source of income. The bankruptcy petition filed by the Debtors shows that Mrs. Peoples has been a nurse with the same employer for at least 10 years. And Mrs. Peoples, not being present at the Hearing, did not seek to contradict the logical assumption regarding the stability of her income which arises when a person works for the same employer for a number of years.

When all is then put together, the greater weight of the evidence shows that, at least for the immediate future, the Debtors will continue to enjoy a substantial amount of income,[2] and that when compared to this income, the Debtors have a relatively small amount of unsecured debt. As a result, the only conclusion that can be drawn is that the Debtors were premature in seeking Chapter 7 relief.

In coming to this decision, it is recognized that the Debtors, despite their present income and despite having had an even greater income in the past—as recently as the mid–1990's, the Debtors earned approximately one-half million dollars a year—now possess little, if any, assets available for retirement. Yet, while this is unfortunate for the Debtors, bankruptcy does not operate solely for the debtor's benefit; creditors have the right to expect that they will be treated fairly within the

---

**2.** Under the 2004 census, as applicable for the means test under the Bankruptcy Code, the medium gross income for a family of two in Ohio was 44,734.00. The Debtors, in their petition, set forth a gross annual income of $185,004.00, over four times the state's medium income.

framework provided for by the Bankruptcy Code. *Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.),* 403 F.3d 164, 170 (4th Cir.2005) (The very purpose of bankruptcy is to modify the rights of both debtors and creditors). In this way, when it comes to retirement, the Sixth Circuit has, for purposes of § 707(b), leaned toward paying one's creditors first, noting in *In re Behlke* that "it would be unfair to the creditors to allow the Debtors ... to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." 358 F.3d at 435. Thus, the commencement of a bankruptcy case cannot always, nor should it always operate to nullify poor planning decisions made by a debtor.

In conclusion, in following the precedent set forth by the Sixth Circuit Court of Appeals in both *Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004) and *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989), the Court cannot find that the Debtors have the requisite "need" for Chapter 7 relief, thereby making the granting of relief a "substantial abuse" for purposes of § 707(b). If, however, circumstances change, this holding in no way prejudices the Debtors from again seeking Chapter 7 relief. Moreover, in the interest of equity, the Debtors will be afforded the opportunity to convert this case to one under Chapter 13 of the Code. 11 U.S.C. § 105(a).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b) if, at the open of business on March 17, 2006, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

***IT IS FURTHER ORDERED*** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b), be, and is hereby, GRANTED.