*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 17b0003n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: MARY A. GORDON,

*Debtor.*

_____

T. LARRY EDMONDSON,

*Plaintiff-Appellee,*

*v.*

VIRGIL GORDON, II,

*Defendant-Appellant.*

No. 16-8014

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
Bankruptcy Case No. 12-09605—Marian F. Harrison, Judge.

Decided and Filed: May 18, 2017

Before: DELK, HUMPHREY, and OPPERMAN, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

_____

**ON BRIEF:** Phillip G. Young, Jr., THOMPSON BURTON PLLC, Franklin, Tennessee, for Appellee. Virgil Gordon, Atlanta, Georgia, pro se.

_____

### OPINION

_____

DANIEL S. OPPERMAN, Bankruptcy Appellate Panel Judge. In this case, Virgil Gordon, II, as pro se Defendant and Appellant, appeals the bankruptcy court's April 19, 2016 order finding him in civil contempt of court, directing him to turnover certain funds from the sale

of property, and awarding sanctions for the Chapter 7 Trustee's attorney's fees. While we AFFIRM the bankruptcy court's Contempt Order in part, we REVERSE the award of sanctions and remand this matter to the bankruptcy court to allow Appellant an opportunity to be heard regarding the reasonableness of the amount of sanctions.

## ISSUES ON APPEAL

Appellant Virgil Gordon raises the following issues on appeal, as quoted directly from his "Pro Se Appellant's Brief":[1]

> I. Virgil Gordon, never received legal notice of the Bankruptcy Court's Order Granting Plaintiff's Expedited Motion for Summary Judgment in Adversary Case 3:13-ap-90351.
>
> II. Given that there is no proof in the record that Virgil Gordon, ever received adequate legal notice of the Bankruptcy Court's Order Granting Plaintiff's Expedited Motion for Summary Judgment in Adversary Case 3:13-ap-90351 Virgil Gordon, should never have been subject to civil contempt proceedings.
>
> III. Given that Virgil Gordon, should never have been subject to civil contempt proceedings, he should not be subject to any contempt judgment or any sanctions including all attorney fees.
>
> IV. Whether Virgil Gordon, should be responsible for the approximately $75,000.00 that Mary A Gordon has admitted to spending.
>
> V. When Virgil Gordon was made aware of civil contempt order all monies held in escrow for Mary A Gordon capital gains taxes were immediately forwarded to trustee.
>
> VI. Whether any attorney's fees charged to Virgil Gordon, are excessive. Attorney's have billed the Mary A Gordon estate and collected more than $105,000 all while leaving Mary A Gordon an 81 year old elderly woman destitute without an income to support herself.
>
> VII. Throughout the entirety of the case Virgil Gordon believes bias may be a factor in how the court has ruled on several issues.
>
> VIII. Virgil Gordon is financially supporting his mother, Mary A Gordon along with two children on a salary less than $50,000 a judgment in favor of the trustee would hinder his ability to provide for his family.

---

[1] The substantive portion of Appellant's Brief consists exclusively of these eight "specific issues" I. through VIII.

For brevity, each issue will be referred to by Roman numeral throughout this Opinion.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1).

A finding of contempt made by the bankruptcy court is reviewed for abuse of discretion as a finding within the sound discretion of the trial court. *Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989)).

A bankruptcy court's decision to sanction is also reviewed for an abuse of discretion. *Badovick v. Greenspan (In re Greenspan)*, 464 B.R. 61, 2011 WL 310703, at \*1 (B.A.P. 6th Cir. Feb. 2, 2011) (table) (citing *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 936 (6th Cir. 2010). *See also See Mayor and City Counsel of Baltimore v. W. Va. (In re Eagle Picher Indus., Inc.)*, 285 F.3d 522, 527 (6th Cir. 2002) (equitable determinations subject to an abuse of discretion standard).

"An abuse of discretion is defined as a 'definite and firm conviction that the [trial court] committed a clear error of judgment.'" *Id.* at 529 (internal citation omitted). The particular factual findings of the bankruptcy court are reviewed for "clear error." *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004). Findings of contempt and sanctions premised "upon an erroneous view of the law or an erroneous assessment of the evidence are necessarily an abuse of discretion." *In re Royal Manor Mgmt.*, 525 B.R. 338, 346 (B.A.P. 6th Cir. 2015) (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990)).

## FACTS

On October 19, 2012, Mary A. Gordon filed a voluntary Chapter 7 bankruptcy case and T. Larry Edmondson ("Appellee" or "Trustee") was appointed to serve as Chapter 7 Trustee for the Debtor's estate. On September 13, 2013, the Appellee filed an adversary proceeding against

Virgil Gordon, II, as Trustee for The Mary Alice Gordon 2012 Irrevocable Accounts Trust and Retirement Plan, to avoid the transfer of two parcels of real property in San Diego, California. Virgil Gordon, II, is the son of Mary A. Gordon. The Trustee alleged in this adversary proceeding that the properties were transferred into the Trust within two months of the petition date for no value. On May 15, 2015, the Trustee filed an expedited motion for summary judgment and brief in the adversary proceeding to avoid the transfers of property from the Debtor to the Trust, and place all contents of the Trust into the Debtor's bankruptcy estate.

The Court held a hearing on the Expedited Motion for Summary Judgment on May 26, 2015. At the hearing, counsel for the Trustee was present, as was the Debtor and her counsel. Also present was Appellant Virgil Gordon, II, representing himself. At the conclusion of that hearing, the bankruptcy court granted the Trustee's Motion for Summary Judgment, and on May 28, 2015, the Court issued an Order Granting Plaintiff's Motion for Summary Judgment ("Summary Judgment Order"). The Court's Order stated as follows:

> 1) The Motion is GRANTED.
>
> 2) All transfers of property from the Debtor to the Trust are hereby avoided pursuant to 11 U.S.C. § 548.
>
> 3) All property held by the Trust, including but not limited to real property known as 1290-1294 Keeler Court, San Diego, California, hereby reverts back to the Debtor and is property of the bankruptcy estate.
>
> 4) The Trustee has authority to take all necessary steps and execute any and all documents needed to control, manage, rent and/or liquidate property previously held by the Trust.
>
> 5) The Debtor, Virgil Gordon II, and any other party exercising control over the Trust are hereby ordered to immediately turn over all property held by the Trust to the Trustee.
>
> 6) The Court retains jurisdiction to interpret or enforce the terms of this Order.

On June 12, 2015, the Appellee sold one of the parcels of real property. The proceeds from that sale were placed in the Debtor's bankruptcy estate. Appellant Virgil Gordon II, acting on behalf of the Trust, sold the other property, known as the Auto Zone property, without the knowledge or approval of the Trustee on or around December 2, 2015, for an approximate sale price of $1,815,000.00, which the Trustee alleges resulted in an approximate $900,000 profit to the Trust, Virgil Gordon II, and/or Mary Gordon from the transfer. Because this property was

part of the Debtor's bankruptcy estate, the Trustee sought and obtained an Order from the bankruptcy court against the Debtor, Virgil Gordon, and the Trust for immediate turnover of all funds associated with the sale of this property pursuant to 11 U.S.C. § 550. The bankruptcy court entered this order for turnover on March 25, 2016 ("Turnover Order"). The Trustee sought and obtained, also on March 25, 2016, an order to show cause as to why Virgil Gordon should not be held in civil contempt of court for the sale of this property, as well as his failure to appear at the previous hearing on the motion for turnover ("Contempt Show Cause Order").

A hearing was held on the Contempt Show Cause Order on April 11, 2016. Virgil Gordon appeared for that hearing. Counsel for the Trustee and counsel for the United States Trustee also appeared at this hearing. Virgil Gordon testified as to the sale of the subject real property, and Trustee's counsel further questioned Mr. Gordon about the hearing underlying the Summary Judgment Order. Due to Mr. Gordon's inability to completely remember his presence and what happened at the May 26, 2015, hearing on the summary judgment motion, the bankruptcy court directed the relevant portion of the audio recording from the May 26, 2015 hearing be played into the record. The bankruptcy court's ruling resulting in the Summary Judgment Order was confirmed as was Mr. Gordon's presence at that hearing to hear the ruling. As a result, the bankruptcy court ruled at the April 11, 2016 hearing as follows:

> The Court finds, based on the previous testimony of Mr. Gordon, that he knew of the Court's order requiring the property to be turned over, requiring the Auto Zone property to be turned over to the trustee, and therefore not sold by him or Mrs. Gordon, and that it appears, based on his taking the Fifth Amendment and not answering these questions, that $173,614.39 was not – was either taken at the time of the sale or given by Ms. Gordon to Mr. Gordon or something of that nature.
>
> In any event, it appears that $173,614.39 was paid to or for the benefit of Mr. Gordon and that the Court finds him in contempt of court. We'll award attorneys' fees for failure to turn that over, and we'll require him to turn that money over . . . . [by] April the 26th to turn over the money. If not, we'll send out a marshal – we'll turn it over to the marshal for – to pick him up.

(Tr., Apr. 11, 2016 hearing, pp. 21-23).[2]

---

[2]Although the transcript of the April 11, 2016, hearing was not formally designated by Appellee for the record on appeal, this transcript was docketed at ECF No. 310 in the bankruptcy case of Mary A. Gordon, Case No.

On April 19, 2016, the bankruptcy court entered an order finding Virgil Gordon in contempt of court, directing turnover of funds in the amount of $173,614.39 from the sale of the subject property, and awarding sanctions for the Trustee's attorney's fees in the amount of $26,602.50 ("Contempt Order").  Specifically, in the Contempt Order, the bankruptcy court found:

> IT IS HEREBY FOUND:
>
> A. Pursuant to Federal Bankruptcy Rule 7052, the Court hereby incorporates and adopts the findings and conclusions stated orally at the hearing on April 11, 2016. See Fed. R. Bankr. P. 9014.
>
> B. Proceeds in the amount of $173,614.39 were taken by Virgil Gordon, II, or were paid to or for the benefit of Virgil Gordon, II.
>
> C. Virgil Gordon, II, was present at the May 26, 2015 hearing for Summary Judgment in the associated Adversary Proceeding, 3:13-ap-90351.

On appeal, Appellant Virgil Gordon's first argument is that he did not receive "adequate legal notice" of the Summary Judgment Order.  Next, Appellant argues the bankruptcy court erred in finding him in civil contempt and awarding sanctions because of this alleged notice issue, and further because he had or has complied to the extent possible with turn over of all "monies held in escrow" for the Debtor.  Appellant asserts that attorney's fees charged as sanctions are excessive and that he does not have the financial ability to comply with the Contempt Order. Appellant also vaguely asserts bias as "a factor in how the Court has ruled on several issues."

## DISCUSSION

The Panel determines that the first four issues Appellant raises in his Brief, I through IV, are dependent upon the underlying Summary Judgment Order.  All four issues concern whether Appellant received adequate notice of either the May 28, 2015 Summary Judgment Order, or the two orders entered on March 25, 2016–the Turnover Order and Contempt Show Cause Order.

---

3:12-bk-09605, and was attached to Appellee's Brief on Appeal as an exhibit.  Pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(4), this transcript is considered part of the record on appeal without separate formal designation.

First, if Appellant is attempting to include the May 28, 2015 Summary Judgment Order as an issue on appeal, he is untimely. Federal Rule of Bankruptcy Procedure 8002(a) provides that a notice of appeal shall be filed with the clerk "within 14 days of the date of the entry of the judgment, order, or decree appealed from." Congress has specifically adopted this time limitation. *See* 28 U.S.C. § 158(c)(2) (An appeal from the bankruptcy court to the bankruptcy appellate panel "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from district courts and in the time provided by Rule 8002 of the Bankruptcy Rules."). This appeal was filed on May 3, 2016, almost a year after the Summary Judgment Order.

Second, to the extent Appellant raises a lack of notice of the Summary Judgment Order for the first time on appeal, such is without merit. "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997). Appellant has not presented an argument that the Panel's failure to consider this issue will result in a miscarriage of justice. As Appellee points out, Appellant has not preserved this issue on appeal because it was not raised in any of the pleadings or at hearings before the bankruptcy court subsequent to the Summary Judgment Order, all of which ultimately resulted in the Contempt Order. Even if timeliness was not in issue, Appellant was served with the summary judgment motion per Appellee's proof of service on May 15, 2015, and Appellant clearly had knowledge of the Court's ruling underlying the Summary Judgment Order because he was present at the May 26, 2015 hearing.

As to what may be considered the remaining four issues on appeal, V through VIII, the Panel will address each separately.

Issue V–Appellant states that when he became aware of the Contempt Order, "all monies held in escrow for Mary A Gordon capital gains taxes were immediately forwarded to the trustee." This statement speaks to whether or not Appellant has complied in whole or in part with the Contempt Order, not whether the bankruptcy court abused its discretion and committed clear error in entering the Contempt Order. Thus, the Panel finds no abuse of discretion on this issue raised by Appellant.

Issue VI–Appellant challenges whether the attorney's fees charged and ultimately awarded as sanctions in the Contempt Order are excessive. The total of $26,602.50 for attorney's fees were awarded by the bankruptcy court as sanctions in the Contempt Order. Appellant argues these fees are excessive because attorneys in this case have already collected $105,000, and further pointing to his inability to now support himself and his mother, who is unable to support herself.

Federal Rule of Bankruptcy Procedure 9020 states, "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest." The power further arises from 11 U.S.C. § 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The party seeking a contempt order "must establish three elements by clear and convincing evidence: (1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite." *Hunter v. Magack (In re Magack)*, 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) (citing *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998)); *In re Temple*, 228 B.R. 896, 897 (Bankr. N.D. Ohio 1998)). Courts have emphasized that "[w]illfulness is not an element of civil contempt and intent to disobey the order is irrelevant." *In re Walker*, 257 B.R. 493, 497 (Bankr. N.D. Ohio 2001) (citing *Rolex Watch U.S.A., Inc. v. Crowley,* 74 F.3d 716, 720 (6th Cir. 1996)).

The bankruptcy court awarded $26,602.50 in attorney fees as sanctions finding this amount "established by the accompanying affidavit of Justin T. Campbell, counsel for the Chapter 7 Trustee." The bankruptcy court awarded these sanctions in the Contempt Order, in addition to requiring the $173,614.39 in estate funds to be paid back, after finding that Appellant was present at the May 26, 2015 hearing on the summary judgment motion and that Appellant did indeed violate the ruling and directive given to Appellant by the bankruptcy court at that

hearing, as later incorporated in the Summary Judgment Order. The bankruptcy court entered the Contempt Order after the Contempt Show Cause Order setting the April 11, 2016, hearing was duly served upon Appellant at two separate addresses by first class mail on March 27, 2016. Doc. No. 234, BK Case No. 3:12-bk–09605. Thus, the Panel finds no abuse of discretion in the bankruptcy court's finding that Appellant was declared to be in civil contempt of its orders.

Next the Panel turns to the issue of sanctions, first noting that the bankruptcy court is accorded "wide discretion" in determining the amount of sanctions to impose. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375-76 (6th Cir. 1996). However, "such discretion is not unfettered." *Nicole Energy Mktg., Inc. v. McClatchey (In re Nicole Energy Servs.), Inc.*, 356 B.R. 786, 2007 WL 328608, at *3 (B.A.P. 6th Cir. Feb. 1, 2007) (table decision) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133 (1991)). Before addressing the amount, the Panel is not satisfied that the Appellant received sufficient notice of the possibility sanctions could be imposed upon him at the April 11, 2016, hearing, as well as an opportunity to respond. The March 25, 2016 Contempt Show Cause Order was duly served upon Appellant and directed his appearance, but did not warn of the possibility of monetary sanctions even if he did, in fact, appear for the April 11, 2016 hearing. The Contempt Show Cause Order did state that if he failed to "comply," with the directive of the order, i.e., appear for the show cause hearing, such could result in "sanctions for civil contempt and further action as the Court deems necessary and appropriate to ensure compliance with its Orders." Absent from this order is any mention of the possible imposition of monetary sanctions if Appellant did appear for the show cause hearing on April 11, 2016. Thus, the bankruptcy court abused its discretion in awarding sanctions without proper notice pursuant to Federal Rules of Bankruptcy Procedure 9020 and 9014.

In addition to the lack of notice, the Panel finds that Appellant was not given an opportunity to respond to the amount of sanctions requested in the Affidavit of counsel for the Trustee. The imposition of sanctions does not necessarily require a separate hearing as to the amount of sanctions, "so long as the Appellants were provided a procedure for opposing the reasonableness and calculation of the sanction based upon attorney fees incurred." *Nicole Energy Servs.*, 2007 WL 328608, at *4. The Affidavit was not introduced as evidence at the

hearing so that Appellant could examine counsel as to the fees or otherwise raise issues as to the fees sought in the Affidavit. Rather, the Affidavit was submitted to the court by counsel for Appellee after the hearing without Appellant having had the opportunity to contest those fees in any manner. Nor was Appellant given an opportunity to contest the fees sought in the Affidavit after the Affidavit was submitted to the court. As an alternative to introduction of the Affidavit at the hearing, the court could have established a procedure through which Appellant could have raised any objection he had to the fees sought after the Affidavit was submitted to the court, such as allowing Appellant to file an objection setting forth any issues he had with the fees sought. As the BAP stated in Nicole Energy:

> Due process also requires notice and an opportunity to be heard before a court imposes sanctions. It is unclear, however, whether due process requires both a hearing to consider whether to impose sanctions and a separate hearing to consider the amount of the sanction. The Sixth Circuit Court of Appeals has not directly addressed this issue. Jurisdictions that have addressed this issue have found that due process is satisfied when the trial court holds "a hearing on the motion for sanctions, at which both sides are [permitted] to present arguments as to the propriety and type of sanctions to be awarded." Such courts have also found that a separate hearing to determine the amount and scope of the sanction awarded is not necessary. The bankruptcy court afforded the Appellants the fundamental requirements of due process. The Appellants agree that they had notice and an opportunity to be heard before the court imposed sanctions. A second hearing to determine the amount of the sanction to be imposed was not necessary so long as the Appellants were provided a procedure for opposing the reasonableness and calculation of the sanction based upon attorney fees incurred. The Appellants were provided this opportunity and, in fact, submitted an opposing affidavit in response to the Trustee's affidavit, both of which were considered by the bankruptcy court. It is significant that the opposing affidavit by Appellants' counsel only challenged the total amount as being unreasonable but failed to specify any particular time entry or hourly rate that was inappropriate or unreasonable.

*Nicole Energy Servs.,* 2007 WL 328608, at *4. In this case, the bankruptcy court did not provide Appellant with notice and opportunity to contest the amount of the fees sought. While those fees may have been previously approved by the court through Appellee's fee applications, Appellant still at a minimum had the right to dispute whether all of those fees were appropriately awarded as sanctions for his contemptuous conduct. In other words, were all of those fees incurred as a result of Appellant's conduct for which he was found in contempt?

Appellant had the right to examine any such issues and was not provided with that right due to the Affidavit having been submitted to the court after the hearing and without the court's otherwise establishing a procedure for those fees to be contested.

Furthermore, The Affidavit submitted by the Trustee's counsel, which was attached to the Contempt Order, did not itemize the 34.3 hours of time spent by attorney Phillip G. Young, Jr. and the 68.7 hours of time spent by attorney Justin T. Campbell. Rather, the Affidavit simply multiplied the total hours by the applicable hourly rates to total the $26,602.50 ultimately awarded as sanctions. On remand, Appellee should be required to itemize the time entries in affidavit form, so as to give Appellant the opportunity to respond. This will allow the bankruptcy court on remand to make the required findings of reasonableness.

Issue VII–Appellant broadly and vaguely asserts "bias" as a possible "factor in how the court has ruled on several issues." Appellant has not argued, nor can the Panel find bias was raised before the bankruptcy court, and as such, it will not now be considered for the first time on appeal.

Issue VIII–Appellant argues that he is unable to comply with the Contempt Order due to his financial situation, which includes supporting his mother, Mary Gordon, as well as his two children on a salary of less than $50,000. Again, this issue does not address whether the bankruptcy court abused its discretion in entering the Contempt Order. Appellee is entitled to attorney fees as compensation as long as the Appellant is provided notice of the reasonableness of such fees. Reasonableness is limited in these circumstances to the normal applicable standards for bankruptcy courts reviewing fee applications and whether these fees were related to the contemptuous conduct. *Cf. Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 722 (6th Cir. 1996); *Nicole Energy*, 2007 WL 328608, at *4. *See also United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S. Ct. 677, 701 (1947) (civil contempt is coercive, but also compensates for losses sustained).

**CONCLUSION**

Appellant Virgil Gordon did not timely appeal the Summary Judgment Order, when he had notice of the underlying motion, was present at the hearing, and had notice of the Summary

Judgment Order. Further, Appellant has not shown that the bankruptcy court abused its discretion in entering the Contempt Order. The bankruptcy court's Contempt Order is affirmed on all but the portion of the Contempt Order that awarded attorney fees as sanctions. As to sanctions, the Panel finds that the bankruptcy court abused its discretion in not according Appellant proper notice and allowing him the opportunity to respond, and remands this matter to the bankruptcy court for the limited purposes of providing appellant notice and an opportunity to respond as to whether the sanctions awarded were reasonable and related to Appellant's contempt.