GILMAN, J., delivered the opinion of the court, in which SILER, J., joined. ROGERS, J. (pp. 942 - 46), delivered a separate dissenting opinion.
OPINION
RONALD LEE GILMAN, Circuit Judge.
B-Line, LLC purchased a creditor’s claim against Gerald Wingerter and filed a proof thereof in the Chapter 13 bankruptcy of Wingerter and his wife Janet G. Keller-Wingerter. This claim was purchased from an intermediary that was not the original creditor, although the intermediary had warranted to B-Line that the claim was valid. The proof of claim did not include copies of the originating documents or contain an explanation of why copies of the originating documents were unavailable. When the Wingerters challenged the proof of claim, B-Line withdrew the same after it was unable to document the claim’s validity.
After a series of hearings, the bankruptcy court determined that B-Line had violated Rule 9011(b) of the Federal Rules of Bankruptcy Procedure by filing its proof of claim without supporting documents or an explanation of why such documents were unavailable. B-Line appealed to the Bankruptcy Appellate Panel (BAP), which dismissed the appeal on procedural grounds. For the reasons set forth below, we REVERSE the decisions of both the BAP and the bankruptcy court.
*934 I. BACKGROUND
B-Line is a business entity that specializes in purchasing “consumer bankruptcy debt.” It purchases such debt from both original creditors and intermediaries. B-Line then files proofs of claim in the respective debtors’ bankruptcy cases, or has existing proofs of claim transferred to it.
When B-Line purchases a claim, it does not acquire the supporting documentation. Instead, it requests several pieces of information from the claim’s seller that B-Line stores in an electronic database. This information typically includes the debtor’s name, address, contact information, and Social Security number, as well as the original account number, the original creditor’s name, the original amount owed, the date the original account was opened, and the bankruptcy case information.
B-Line relies on the sellers from whom it purchases the claims to provide accurate, truthful information, and it negotiates a purchase agreement with these sellers to protect itself in case a seller misrepresents the validity of a claim. The purchase agreement requires, in particular, a warranty that each claim sold to B-Line “represents a legal, valid and binding obligation of the related Debtor.” To keep down its costs, B-Line does not request copies of a claim’s originating documents unless a debtor challenges the claim.
With regard to the Wingerters’ bankruptcy case, B-Line purchased a claim against them from Covenant Management, LLC. The claim allegedly originated with the former business entity GTE and was in the amount of $431.57. B-Line filed a proof of claim for the $431.57 in the Win-gerters’ Chapter 13 bankruptcy case. The Wingerters had not acknowledged a debt to GTE or scheduled the payment of a claim for that amount. B-Line’s proof of claim was submitted on Bankruptcy Form 10, but that form was not filled out completely. Specifically, the Form 10 lacked information about whether the claim included interest charges in addition to the principal and, as B-Line admits, incorrectly stated that the basis of the claim was “money loaned.” In addition, B-Line did not supplement the Form 10 with any supporting documents that demonstrated the origins of its claim, but instead attached a printout from its electronic database with various pieces of information. This information included Mr. Wingerter’s name, the last four digits of his Social Security number, an address, the amount of $431.57, and four digits of a “related account number.”
After the Wingerters filed an objection to B-Line’s proof of claim, the bankruptcy court set a date for a hearing. B-Line then attempted to find copies of the alleged originating documents that showed a debtor-creditor relationship between GTE and Mr. Wingerter, but was unable to do so. As a result, B-Line withdrew its proof of claim.
The bankruptcy court subsequently issued a series of orders directing B-Line to explain both its business practices generally and its handling of the GTE claim against the Wingerters in particular. This resulted in a series of evidentiary hearings before the bankruptcy court, supplemented by evidentiary submissions and briefs.
The bankruptcy court ultimately issued an opinion sanctioning B-Line for failing to comply with Rule 9011(b) of the Federal Rules of Bankruptcy Procedure. Rule 9011 provides in pertinent part as follows:
(b) Representations to the court
By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to *935 the best of the person’s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
Fed. R. Bankr.P. 9011(b)(3). In its opinion, the court found that B-Line had failed to make a “reasonable pre-filing inquiry” that the claim was valid and supported by the evidence. This purported failure violated Rule 9011(b)’s requirement that any filing with a bankruptcy court be based on “knowledge, information, and belief, formed after an inquiry reasonable under the circumstances.” Specifically, the bankruptcy court ruled that any party filing a proof of claim on an unscheduled claim must include copies of “originating documents” or, when such documents are unavailable, an affidavit explaining the absence of such documents.
The bankruptcy court then stated that “[b]ecause of the time and energy that B-Line’s senior management devoted in response to this Court’s show cause order, however, the Court does not view any further sanctions to be necessary in this case.” But the court did opine that proceeding as B-Line did in the present case violates Rule 9011(b), that creditors should avoid doing so, and that such proofs of claim should be filed with supporting documents (or with an explanation for their absence) in the future. This opinion, which is published, has been cited by other bankruptcy courts and at least one bankruptcy appellate panel.
As B-Line explains, the bankruptcy court’s order essentially prohibits B-Line’s current business practice of relying on account information and not seeking out copies of a claim’s originating documents unless and until a debtor objects to the proof of claim. Complying with this order will significantly increase B-Line’s cost of doing business.
B-Line appealed the bankruptcy court’s order to the BAP, which affirmed in a 2-to-1 decision. The BAP majority determined that B-Line was appealing two distinct issues: (1) the bankruptcy court’s determination that B-Line violated Rule 9011(b), and (2) the bankruptcy court’s warning that B-Line and other entities not engage in similar behavior in the future. On the Rule 9011(b) violation, the BAP concluded that the issue was moot because the bankruptcy court imposed no monetary sanctions on B-Line. The BAP also determined that addressing the second issue was unnecessary because the warning was “not final” and because deciding the matter would, in any event, require the BAP to render a constitutionally prohibited advisory opinion. For these procedural reasons, the BAP never substantively addressed the bankruptcy court’s holding that B-Line violated Rule 9011(b) and thereby engaged in sanctionable conduct. The dissenting member of the BAP, on the other hand, concluded that B-Line’s appeal was not moot and that its proof of claim had not violated Rule 9011(b). This appeal followed.
II. ANALYSIS
A. Standard of review
In a bankruptcy appeal, we independently review the decision of the bankruptcy court that has been appealed to the BAP. Tidewater Fin. Co. v. Curry (In re Curry), 509 F.3d 735, 735 (6th Cir.2007). The bankruptcy court’s findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed de *936 novo. Behlke v. Eisen (In re Behlke), 358 F.3d 429, 433 (6th Cir.2004).
We review the bankruptcy court’s imposition of sanctions using the abuse-of-discretion standard. Corzin v. Fordu (In re Fordu), 201 F.3d 693, 711 (6th Cir.1999). An abuse of discretion occurs where the reviewing court has “a definite and firm conviction that the court below committed a clear error of judgment.” Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.), 227 F.3d 604, 607-08 (6th Cir.2000) (citation, alterations, and internal quotation marks omitted). “The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court’s decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.” Id. at 608.
B. Mootness
We will first address the issue of mootness, which was the basis of the BAP’s decision to dismiss B-Line’s appeal. The BAP generally concluded that B-Line’s appeal was both moot and that B-Line was requesting an impermissible advisory opinion. We respectfully disagree with both conclusions.
To begin with, the BAP analyzed the potential mootness of B-Line’s appeal by splitting the bankruptcy court’s ruling into two parts&emdash;its holding that B-Line’s conduct violated Rule 9011(b) and was sanc-tionable, and its admonition that B-Line and other parties should not engage in similar activity in the future. No legal authority was cited in support of the BAP’s dual method of analysis, and we view its division of the bankruptcy court’s decision as unwarranted. The bankruptcy court’s warning to future parties simply extrapolated the holding of its opinion, saying the equivalent of “if any future party before this court engages in the exact same behavior as the present party, you should expect the same result.” Such an admonition is implied in any ruling, so simply including it in the present case does not create a two-tiered holding.
Turning to the substance of the mootness issue, we find that the opinion of the dissenting BAP judge is more persuasive than the opinion of the BAP majority, and thus conclude that the present appeal is not moot. Mootness is an extension of the U.S. Constitution’s requirement of standing—the “irreducible constitutional minimum” needed to make a justiciable case or controversy. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In practical terms, the standing requirement limits federal courts to addressing “only actual, ongoing cases or controversies.” Lewis v. Cont’l Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). “Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief.” Carras v. Williams, 807 F.2d 1286, 1289 (6th Cir.1986). A court determines whether a case is moot “by examining whether an actual controversy between the parties exists in light of intervening circumstances.” Fleet Aerospace Corp. v. Holderman, 848 F.2d 720, 723 (6th Cir.1988).
In the present case, the original “controversy” was whether the claim that B-Line asserted against the Wingerters was valid. B-Line eventually withdrew its proof of claim, however, so the new “controversy”—initiated sua sponte by the bankruptcy court—became whether B-Line’s conduct violated Rule 9011(b) and was sanctionable. Because no monetary sanctions were imposed, the BAP majority concluded that B-Line’s appeal was moot, *937 as does our dissenting colleague. Specifically, the dissent finds that the bankruptcy court’s only holding was that B-Line merited no sanctions, and that any other conclusion was merely “dictum.” (Dissenting Op. at 942) We respectfully disagree.
To the contrary, we find that the bankruptcy court’s holdings are encapsulated in its bolded heading that “B-Line Violated Rule 9011 in the Present Case” and, as its “[no] further sanctions [are] necessary” language indicates, its determination that B-Line’s conduct was sanctionable. At least one other court has similarly interpreted the bankruptcy court’s opinion. See In re Pearce, 411 B.R. 303, 308 (Bankr.E.D.La.2008) (explaining that the bankruptcy court in the present case “held” that actions like B-Line’s failed to fulfill a creditor’s obligations under Rule 9011); see also Rogers v. B-Real, LLC (In re Rogers), 391 B.R. 317, 323 (Bankr.M.D.La., 2008) (citing the bankruptcy court’s opinion as support for the proposition that “Rule 9011 can be used to sanction a creditor that ... violates [that rule].”). In our opinion, therefore, a distinct “controversy” exists with significant, serious consequences for B-Line — whether, as the bankruptcy court held, its normal business practices are so out-of-line with federal procedure as to subject the company to sanctions.
Reviewing other appeals of nonmonetary sanctions illustrates the point. For example, the dissenting BAP judge compared the present case to the decision of the United States Court of Appeals for the First Circuit in Sterling Consulting Corp. v. Internal Revenue Service (In re Indian Motocycle Co., Inc.), 452 F.3d 25 (1st Cir.2006). In that case, the district court concluded that the IRS had deliberately made meritless arguments in an effort to delay the proceedings. It declared that the IRS’s conduct was unacceptable and sanc-tionable, but did not impose any specific penalty. Id. at 27.
Even though the underlying case settled during briefing, the IRS pressed its appeal of the sanctions ruling. The First Circuit held that the IRS’s appeal was not moot because “the sanctions] order continues to have a potential real-world impact upon the [IRS.]” Id. at 30. It explained that the IRS regularly engaged in the behavior addressed by the district court, and that the court had essentially held that “the regular practice of the IRS, an institutional litigant, amounts to willful misconduct that invites penalties.” Id. The First Circuit concluded by “holding] that foreseeable practical consequences give the IRS adequate and justifiable incentive to litigate these appeals and that the government has Article III standing to proceed.” Id.
Like the dissenting BAP judge, we find the First Circuit’s analysis persuasive. As the dissenting judge explained, B-Line’s behavior “was not an idiosyncratic event” but was in fact the entity’s “customary business practices,” and that the bankruptcy court “was issuing a formal ruling that these [practices] are sanctionable.” The present case thus closely resembles the IRS’s situation in Sterling. Moreover, the sanctions orders appealed by B-Line and the IRS are quite different from a ruling that an isolated act by an infrequent litigant, such as a rude outburst, is sanctiona-ble conduct. In the latter situation, the sanctioned party suffers no real ramifications in the absence of a monetary penalty because of the remote likelihood that the party will engage in the offensive behavior again. But with a repeat litigant like B-Line, whose core business practices have been held to be sanctionable, there are serious, harmful consequences.
Our dissenting colleague, however, believes that a key difference exists between *938 the present case and Sterling because the lower court’s decision in that case was “expressly identified as a reprimand,” whereas B-Line was not expressly reprimanded by the bankruptcy court. (Dissenting Op. at 945) We again respectfully disagree. The bankruptcy court’s entire opinion is devoted to highlighting B-Line’s alleged violation of Rule 9011(b) of the Federal Rules of Bankruptcy Procedure, criticizing B-Line for its business practices, and admonishing it to change those practices. As such, we believe that the bankruptcy court’s failure to expressly use the word “reprimand” is a distinction without a difference.
Another comparison is instructive with regard to the question of mootness. In several circuits, there is a general rule that an attorney subjected to a nonmonetary sanction may appeal if the sanction “affect[s] an attorney’s professional reputation.” Butler v. Biocore Med. Techs., Inc., 348 F.3d 1163, 1167-68 (10th Cir.2003) (collecting cases). This rule exists because, like B-Line and the IRS, attorneys who appear frequently before the courts would find their reputations and business interests harmed by a declaration that their behavior was sanctionable.
Such a declaration, even where no monetary sanctions are imposed, has been held to be “a legally sufficient injury to support appellate jurisdiction.” Id. at 1167; see also Bowers v. NCAA, 475 F.3d 524, 542-44 (3d Cir.2007) (holding that attorneys whose behavior was declared sanctionable could appeal despite not receiving “any additional monetary or disciplinary sanctions ... beyond factual findings and language in the actual order that the conduct of those attorneys merited sanctions”); Walker v. City of Mesquite, 129 F.3d 831, 832-33 (5th Cir.1997) (holding that “the importance of an attorney’s professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct”).
Compared to the somewhat vague injury to “reputation” suffered by sanctioned attorneys, which has the potential to harm their economic interests, B-Line’s injury is more direct and certain because part of the company’s core business practices has been declared sanctionable. B-Line’s business is thus thrown into uncertainty, either forcing the company to comply with the bankruptcy court’s more stringent (and more expensive) filing requirements or placing it at risk of being sanctioned in bankruptcy courts throughout the country. The court’s sanctions order, therefore, has caused direct, financial injury to B-Line. Under these particular circumstances, B-Line’s appeal of the court’s sanctions order is not moot.
C. Violation of Rule 9011(b)
The bankruptcy court determined that the manner in which B-Line submitted its proof of claim violated the requirements of Rule 9011(b) of the Federal Rules of Bankruptcy Procedure. This determination was based on two primary factual findings: (1) that B-Line filed a proof of claim without ever acquiring or attempting to acquire copies of the originating documents, and (2) that B-Line never received any representation or warranty from the prior owner of the claim that the claim was valid and enforceable. Although B-Line admits that the first factual finding is correct, it disputes the second, and insists that its purchase agreement with Covenant contains warranties that the claims it bought are valid. We first address this factual dispute before turning to the bankruptcy court’s analysis of Rule 9011(b).

*939
1. B-Line did receive warranties about the validity of claims purchased from Covenant

At the beginning of its opinion, the bankruptcy court made a series of factual findings. One of these includes the following statement: “The Court finds, however, that there is no representation or warranty in the Covenant/B-Line Forward Flow Agreement as to the validity or enforceability of the claims summarized in the data transmitted from Covenant to B-Line.” Our review of the record demonstrates that this factual finding is clearly erroneous.
As explained by B-Line, the “Forward Flow Agreement” is part of a standard purchase agreement&emdash;a contract that B-Line negotiates with claim owners before conducting business with them. All purchases thus occur within the framework of the purchase agreement. The particular purchase agreement between B-Line and Covenant in this case provides that “[a]s of the Closing Date ... [Covenant] has used reasonable efforts in accordance with industry standards to create Computer Files which set forth each Account designated in the Term Agreement, each of which meets the Eligibility Requirements as of the Cut-Off Date.” Covenant therefore warranted, as part of the purchase agreement, that each “Account” sold to B-Line met “the Eligibility Requirements.” “Eligibility Requirements” are defined in the purchase agreement as “the requirements set forth in Paragraph 9.1 through 9.9 with respect to each account.” Notably, Paragraph 9.4 requires that “the Account represents a legal, valid and binding obligation of the related Debtor,” while Paragraph 9.1 mandates that “the debt is not disputed by the Debtor or Trustee” and that “no proof of claim has been or will be rejected or successfully objected to by any person.” As the dissenting BAP judge put it, “[t]hus, there were explicit representations and warranties from Covenant that the accounts purchased by B-Line were valid obligations of the account debtors.”
The bankruptcy court, therefore, clearly erred in finding that the purchase agreement between B-Line and Covenant did not contain representations about the validity of the claims purchased by B-Line. There is explicit, undisputed evidence in the record to the contrary.

2. The reasonableness of B-Line’s prefiling inquiry

The bankruptcy court also found that B-Line violated Rule 9011(b) because the company did not make a “reasonable inquiry” into the basis of its claim against the Wingerters before filing its proof of claim. See Fed. R. Bankr.P. 9011(b)(3). Violations of Rule 9011(b) are punishable by sanctions. Fed. R. Bankr.P. 9011(c). “The test for imposing sanctions [under Rule 9011(b)] is whether the individual’s conduct was reasonable under the circumstances.” Corzin v. Fordu (In re Fordu), 201 F.3d 693, 711 (6th Cir.1999). “In applying this test, the bankruptcy court is not to use the benefit of hindsight but should test the signer’s conduct by inquiring what was reasonable to believe at the time the [filing] was submitted.” Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 481 (6th Cir.1996) (alterations, citation, and internal quotation marks omitted).
The bankruptcy court, therefore, should have considered all of the relevant circumstances at the time B-Line filed its proof of claim. Instead, the court primarily focused on its factual findings that B-Line had not only never seen the originating documents for the claim, but also had never received any warranty from Covenant that the claim was valid. As explained *940 above, this latter factual finding was clearly erroneous.
Furthermore, the record demonstrates that, by relying on these warranties from Covenant, B-Line was acting in a reasonable manner. B-Line submitted evidence at the evidentiary hearings that it had been purchasing claims from Covenant for roughly two years before it filed the proof of claim in the Wingerters’ case. During this time, B-Line filed 1,017 proofs of claim based on purchases from Covenant. Only five were ever disputed. One of the five was the claim in the present case, and three of the other four disputed proofs of claim were resolved in B-Line’s favor. Thus, only 2 out of 1,017 claims (less than two-tenths of one percent) were found to be invalid. As such, there was a strong, consistent track record of Covenant providing enforceable claims to B-Line at the time that B-Line filed the proof of claim in the Wingerters’ case.
The bankruptcy court also failed to consider evidence presented at the evi-dentiary hearings showing that Covenant had conducted its own investigation into the claim at issue. Specifically, B-Line presented evidence that Covenant bought the Wingerter claim from a third party, Professional Recovery Systems, LLC, from which Covenant had successfully purchased claims before. Covenant then researched the origins of the claim, subcontracting with a collection agency that contacted Mr. Wingerter by mail to validate the claim. The mailing to Mr. Win-gerter informed him that he had 30 days to dispute the claim if he wished to do so. No response was received from Mr. Win-gerter. Two previous collection agencies had also attempted to collect from Mr. Wingerter, and he had never disputed the claim. This uncontradicted evidence was presented at the hearings by a Covenant employee.
B-Line, moreover, did not simply rest on Covenant’s own research; the company conducted an additional review of its own before purchasing the Wingerter claim. Specifically, it reviewed all of the account information for obvious flaws, such as an invalid address or Social Security number. B-Line also compared the account information that it received from Covenant with the electronic records of the bankruptcy court, looking for discrepancies. And it conducted a search of various electronic databases to determine whether Mr. Win-gerter had previously filed for bankruptcy. Only after going through this additional review did B-Line buy the claim from Covenant. B-Line then repeated its research after buying the claim and conducted further checks&emdash;ascertaining whether the bankruptcy case had been dismissed or converted to a different type of case, or whether the date for filing proofs of claim had passed. The company filed its proof of claim only at the conclusion of this lengthy evaluation.
With this combined research process, the warranties between B-Line and Covenant, and the highly reliable track record between them, B-Line clearly made a reasonable inquiry into the claim as required by Rule 9011(b). As the dissenting BAP judge put it, “the conclusion is inescapable that B-Line filed a proof of claim after conducting a reasonable inquiry under the circumstances.” The bankruptcy court’s conclusion that B-Line committed sanc-tionable conduct is therefore unwarranted. See Davis v. Carl, 906 F.2d 533, 536-37 (11th Cir.1990) (noting that even weak evidence is generally enough to avoid sanctions, unlike a case where no evidence is presented to support the factual allegations).
We recognize, of course, that the Wingerters objected to B-Line’s proof of claim, and that the company eventually *941 withdrew the claim after being unable to find the supporting documentation. But the end result is irrelevant to a Rule 9011(b) determination. Controlling case-law explains that “the bankruptcy court is not to use the benefit of hindsight” when considering the imposition of Rule 9011(b) sanctions. See Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 481 (6th Cir.1996) (citation and internal quotation marks omitted). Furthermore, although B-Line eventually discovered that it did not have enough information to prevail over the Wingerters’ objection, this does not affect a Rule 9011(b) sanctions analysis. “Rule 9011 [does] not impose a continuing obligation on [a creditor] to obtain more information or revaluate its position as the case develop[s].” Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1574 (11th Cir.1995).
Admittedly, as the bankruptcy court stressed, B-Line’s proof of claim was submitted on an incomplete Form 10. This deficiency violated Rule 3001(c) of the Federal Rules of Bankruptcy Procedure, which requires that a proof of claim based on a writing include a copy of that writing. The ramifications for this type of violation are well-established, however, and do not result in sanctions. See Heath v. Am. Express Travel Related Servs. Co., Inc. (In re Heath), 331 B.R. 424, 433 (9th Cir. BAP 2005) (explaining that a failure to comply with Rule 3001 results in the creditor’s proof of claim not being prima facie evidence of the claim’s validity and amount). Not complying with Rule 3001 might be a factor in determining whether a Rule 9011(b) violation has occurred under different circumstances, but it is not a relevant factor in this case given the track record and warranties between Covenant and B-Line and the efforts that both businesses undertook to validate the Wingerter claim.
Finally, in light of what Rule 9011(b) requires before a court can impose sanctions, the bankruptcy court’s categorical extrapolation of its holding&emdash;that the holder of an unscheduled, purchased claim will always have to attach copies of the claim’s originating documents to its proof of claim or provide an explanation for their absence&emdash;is incorrect. Rule 9011(b) and this court’s own precedents require bankruptcy courts, before imposing sanctions, to determine whether the specific conduct at issue was “reasonable under the circumstances” at the time the filing was submitted. See Corzin v. Fordu (In re Fordu), 201 F.3d 693, 711 (6th Cir.1999). Such an analysis does not lend itself to categorical prescriptions, but rather will depend on the varying facts of each case. B-Line’s prefiling conduct in the present ease was clearly “reasonable under the circumstances.” This is especially so because Rule 9011(b) itself contemplates that a creditor does not have to have conclusive proof of the claim at the time of filing—that a good-faith belief based on a reasonable inquiry is sufficient if the “factual contentions ... are likely to have eviden-tiary support after a reasonable opportunity for further investigation or discovery.” Fed. R. Bankr.P. 9011(b)(3).
In sum, we hold that the bankruptcy court abused its discretion in determining that B-Line’s actions in this case violated Rule 9011(b) and were therefore sanctiona-ble. See Volvo Commercial Fin. LLC the Ams. v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.), 326 B.R. 683, 685 (6th Cir. BAP 2005) (explaining that a court abuses its discretion when, among other things, it “relies upon clearly erroneous findings of fact”).
III. CONCLUSION
For all of the reasons set forth above, we REVERSE the decisions of both the BAP and the bankruptcy court.