RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

IN RE: GAYLE H. BAGSBY,

                    *Debtor.*

_____

E. COVINGTON JOHNSTON, JR.,

                    *Appellant*,

   *v.*

HENRY E. HILDEBRAND, III, Chapter 13 Trustee; UNITED STATES TRUSTEE, Region 8,

                    *Appellees.*

No. 20-5497

_____

On Appeal from the Bankruptcy Appellate Panel for the Sixth Circuit;
No. 19-8017—Jimmy L. Croom, Jessica E. Price Smith, and
Tracey N. Wise, Bankruptcy Appellate Panel Judges.

United States Bankruptcy Court for the Middle District of Tennessee at Nashville;
Nos. 3:19-bk-01810; 3:18-bk-01762; 3:16-bk-08631—Charles M. Walker, Judge.

Decided and Filed: July 19, 2022

Before: ROGERS, STRANCH, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Phillip G. Young, Jr., THOMPSON BURTON PLLC, Franklin, Tennessee, Winston S. Evans, EVANS, JONES & REYNOLDS, Nashville, Tennessee, for Appellant.

---

**OPINION**

---

BERNICE BOUIE DONALD, Circuit Judge.   Attorney E. Covington Johnston filed bare-bones Chapter 13 bankruptcy petitions on behalf of Gayle Bagsby in 2016 and 2018 at the request of Gayle Bagsby's daughter, Elizabeth Pace Bagsby.   There was only one glaring issue with this arrangement— one cannot file for bankruptcy on behalf of a deceased person and Gayle Bagsby died on February 28, 2006.   Elizabeth Bagsby was Administratix of her mother's probate estate.   After the dismissal of the 2018 petition, Elizabeth Bagsby, proceeding pro se, filed three more Chapter 13 petitions on Gayle Bagsby's behalf.

In March 2019, the Chapter 13 Trustee filed a motion to dismiss and a motion for sanctions against Elizabeth Bagsby after she filed yet another Chapter 13 petition, pro se.   As a result, the bankruptcy court ordered Mr. Johnston to appear and show cause as to why he should not be subject to sanctions for filing the two Chapter 13 petitions on behalf of Gayle Bagsby, a deceased person, back in 2016 and 2018.[1]   After the show cause hearing, the bankruptcy court reopened the first two cases filed in Gayle Bagsby's name and issued sanctions sua sponte against Mr. Johnston and Elizabeth Bagsby.   In particular, the bankruptcy court determined that 1) Mr. Johnston failed to conduct any inquiries or legal research, 2) there was no basis in existing law to support a reasonable possibility of success, and 3) the cases were filed for the express purpose of delaying foreclosure actions.   Therefore, the bankruptcy court concluded Mr. Johnston violated Rule 9011 of the Federal Rules of Bankruptcy Procedure and issued sanctions.   Mr. Johnston appealed to the Bankruptcy Appellate Panel of the Sixth Circuit ("BAP"), which affirmed after finding that the district court did not abuse its discretion.   *See In re Bagsby*, Nos. 19-8017/2018/8019, 2020 WL 2025906 (B.A.P. 6th Cir. Apr. 27, 2020).   For the reasons set forth below, we **AFFIRM** the bankruptcy court's order imposing sanctions against Mr. Johnston.

---

[1]All references to the record refer to case no. 3:19-bk-01810, unless otherwise noted.   Case 3:16-bk-08631 refers to the 2016 Chapter 13 petition filed in Gayle Bagsby's name, and 3:18-bk-01762 refers to the 2018 Chapter 13 petition Johnston filed.   Johnston did not represent Elizabeth Bagsby or the estate of Gayle Bagsby in connection with case number 3:19-bk-01810.

## I.  FACTS AND PROCEEDINGS IN THE BANKRUPTCY COURT

This matter came before the bankruptcy court after Elizabeth Bagsby, acting without counsel and as Administratix of her late mother's probate estate, filed a fifth bankruptcy case in Gayle Bagsby's name on March 22, 2019.  In response, the Chapter 13 Trustee (the "Trustee") filed two motions.  The Trustee first moved to dismiss the petition because a probate estate cannot be a debtor under § 109 of the Bankruptcy Code.  *See* 11 U.S.C. § 109(e).  The Trustee then moved for sanctions against Elizabeth Bagsby for abuse of the bankruptcy system and requested that the court schedule a hearing on the issue of sanctions.  Although the Trustee's motions did not directly refer to Mr. Johnston, the motion to dismiss referenced the 2018 petition filed by Mr. Johnston on behalf of Gayle Bagsby.

After holding an initial hearing on the motion for sanctions, the bankruptcy court ordered Mr. Johnston and Elizabeth Bagsby to appear and show cause as to why they should not be sanctioned for filing bankruptcy petitions on behalf of a deceased person.  The bankruptcy court also requested the Office of the United States Trustee ("UST") to investigate and inform the court of its findings.  Prior to the show cause hearing, the UST filed a statement that primarily discussed Elizabeth Bagsby's conduct, and only briefly mentioned Mr. Johnston's involvement in the first two cases.  Ultimately, the UST recommended that the bankruptcy court sanction Elizabeth Bagsby, but did not offer any recommendations regarding Mr. Johnston.

Mr. Johnston (represented by counsel) and Elizabeth Bagsby (appearing pro se) both testified at the bankruptcy court's May 15, 2019, evidentiary hearing.  Elizabeth Bagsby explained that she filed the first petition in 2016 "on behalf of [her] deceased mother" because the home in which she was living with her spouse was still held in Gayle Bagsby's name—Gayle Bagsby died intestate, and the home was not listed as part of the probate estate.  Elizabeth Bagsby also explained that she filed for bankruptcy relief on behalf of Gayle Bagsby's probate estate because the mortgage lender was attempting to foreclose. She contacted Mr. Johnston, who recommended filing for Chapter 13 bankruptcy.  She stated that Mr. Johnston filed the 2016 petition in Gayle Bagsby's name because the mortgage loan was still in Gayle Bagsby's name—Gayle Bagsby "was the debtor and [Elizabeth Bagsby] had been declared administratix."  The 2016 petition was dismissed soon thereafter.

In December 2018, after receiving another notice of foreclosure from the mortgage lender, Elizabeth Bagsby worked with Mr. Johnston to file a second Chapter 13 petition in Gayle Bagsby's name. Elizabeth Bagsby testified that the 2018 petition was withdrawn because she "had submitted yet another application for a loan modification and [she] had also begun . . . applying for another mortgage with another company." When asked if she was "aware that . . . deceased persons were not eligible to file bankruptcy," Elizabeth Bagsby responded that she did not understand this and that she could not recall anyone telling her this information. Elizabeth Bagsby filed a "third bankruptcy to stop the foreclosure" in 2018, and a fourth in 2019.

Mr. Johnston has been practicing law for approximately forty years and has been a bankruptcy lawyer for most of his career. Mr. Johnston explained that the two skeletal petitions he filed in Gayle Bagsby's name were the only times he had ever filed a bankruptcy case for a deceased person. Further, he explained that he learned that a deceased person—or their estate—could not file for bankruptcy only after speaking with the UST in relation to the 2018 Chapter 13 petition filed in Gayle Bagsby's name. Mr. Johnston explained that his conversation with UST led him to voluntarily dismiss the 2018 Chapter 13 petition. Mr. Johnston added that he "didn't want to mislead anybody." At no point between filing the 2016 and 2018 petitions did Mr. Johnston research whether a decedent's estate could file for bankruptcy.

Mr. Johnston testified further that he was trying to file the bankruptcy petitions for the probate estate, so he had Elizabeth Bagsby sign the bankruptcy petitions as "administratix of the estate." Then, when asked why he used the signature of Gayle Bagsby, without any indication that it was used in a representative capacity, or any additional clarifying information, Mr. Johnston testified that his law firm's software prevented him from uploading Elizabeth Bagsby's wet signature indicating that she signed the petition in a representative capacity for Gayle Bagsby.

Mr. Johnston testified that he filed the skeletal petitions in both 2016 and 2018 because both filings were made on the eve of foreclosure. After Elizabeth failed to provide the information or documents needed to prepare the schedules in either case, he never filed the required schedules or Bankruptcy Rule 2016 fee disclosures. When asked why he never disclosed the $1500 in fees he received for filing the 2016 petition, and the $690 he received for filing the 2018 petition, Mr. Johnston

testified that he usually filed the Rule 2016(b) fee disclosures with the schedules. After Elizabeth Bagsby "never brought in any information," he never filed the schedules or the fee disclosures.

The day after the hearing, the bankruptcy court reopened the 2016 and 2018 two bankruptcy cases Mr. Johnston filed at Elizabeth Bagsby's request.

After considering Mr. Johnston's testimony, the court found that his conduct in the 2016 and 2018 petitions warranted sanctions. The court noted Mr. Johnston's claims that 1) he was not aware that a probate estate was ineligible to file for bankruptcy, and 2) he believed he was filing on behalf of a probate estate. The court then noted that Mr. Johnston's lack of research raised serious questions regarding his "motivations and competence." The bankruptcy court found that Mr. Johnston signed the 2016 petition as Gayle Bagsby's attorney, not as the estate's attorney. More specifically, the court noted:

> Nowhere in any of the filings [of the 2016 case] is there any indication that Gayle [Bagsby] was deceased at the time of filing, that a probate estate even existed, or that the case was filed on behalf of her probate estate. Nowhere is there any indication that someone else besides Gayle [Bagsby] authorized the petition or signed it.

Further, the court noted that Mr. Johnston's testimony regarding his use of the software to upload the required signatures was undermined by "his actions in that the plan filed in the second case contain[ed] his wet signature as [Gayle Bagsby]'s attorney."

The court then discussed several questions raised by Mr. Johnston's testimony and conduct, including how Mr. Johnston planned to conduct meetings required under § 341, what documents would demonstrate proof of income to fund a Chapter 13 plan, and what Mr. Johnston's practices were for determining a debtor's eligibility for bankruptcy relief. In particular, the bankruptcy court asked, "[h]ow could Mr. Johns[t]on, an attorney with decades of experience, truly believe Gayle [Bagsby] was eligible for relief under the [Bankruptcy] Code?" The court cited multiple cases explaining that a decedent's estate could not seek relief because the estate could not provide the documents required to be filed with a petition, testify at a § 341 hearing, fund a payment plan, and, ultimately, because providing such relief would not further the general policy of bankruptcy. In light of these facts and observations, the court noted:

> All of the circumstances, the statute, and good old fashion[ed] logic compel the conclusion that Mr. Johnston did not believe he *could* file a Chapter 13 case on behalf of Gayle or her probate estate, or that he even *did* file for Gayle or her probate estate.

The facts do not support a conclusion that Mr. Johnston could have possibly thought that – in a stretch that boggles the mind – Gayle or her probate estate were eligible for relief and would perform under Chapter 13. No, Mr. Johnston filed the Chapter 13 in Gayle's name at Elizabeth's request, and after accepting payment of attorney fees and court costs – a fact he failed to disclose – with the sole intention of delaying the foreclosure. To aggravate matters, he did it TWICE.

Based on its findings, the court concluded that Mr. Johnston failed to follow multiple rules and regulations. The court found that Mr. Johnston violated Bankruptcy Rule 9011 by signing and filing the accompanying statement of Gayle Bagsby's social security number. The court also found that Mr. Johnston failed to make the required disclosures of the fees he received for filing the two Chapter 13 petitions, in violation of § 329 and Bankruptcy Rule 2016(b). Third, the court found that Mr. Johnston violated ethics regulations and local bankruptcy rules pertaining to competence and candor. As a result, the court concluded that Mr. Johnston's actions in filing the 2016 and 2018 petitions on behalf of an ineligible debtor were unreasonable under the circumstances. Finally, because Mr. Johnston's actions were unreasonable under the circumstances, the court imposed sanctions sua sponte, including (1) a 90-day suspension from filing new bankruptcy petitions, (2) completing ten hours of continuing legal education courses in ethics, and (3) self-reporting to the Tennessee Board of Professional Responsibility.

Mr. Johnston, proceeding through counsel, appealed the Order to the BAP, which affirmed. *In re Bagsby*, 2020 WL 2025906 at *7. The BAP construed his appeal as a challenge to the bankruptcy court's interpretation of Bankruptcy Rule 9011 and the standard bankruptcy courts must apply when determining whether to impose sanctions. *Id*. at *1. The BAP determined that the bankruptcy court applied the proper rule and standard when it found that Mr. Johnston's conduct in filing the 2016 and 2018 cases was unreasonable under the circumstances. *Id*. at *5-6. The BAP also examined Mr. Johnston's argument that the evidence did not support the imposition of sanctions and concluded that the bankruptcy court did not clearly err, and therefore, did not abuse its discretion when it issued sua sponte sanctions against Mr. Johnston. *Id.* at *7. This appeal followed.[2]

---

[2]Neither Trustee nor UST argued or moved for sanctions against Mr. Johnston in the bankruptcy court. However, after the bankruptcy court acknowledged Mr. Johnston's agreement to disgorge the compensation he received for filing the two petitions, UST requested "that the fees be given to the Chapter 13 Trustee." Trustee then immediately informed the bankruptcy court of the cost incurred for setting up a case.

## II. STANDARD OF REVIEW

We independently review the decision of the bankruptcy court that has been appealed to the BAP. *In re Wingerter*, 594 F.3d 931, 935 (6th Cir. 2010) (citing *In re Curry*, 509 F.3d 735, 735 (6th Cir. 2007)). The bankruptcy court's factual findings are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *Id*. at 935-36. (citing *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004)).

This court reviews the bankruptcy court's imposition of sanctions for an abuse of discretion. *In re Royal Manor Mgmt., Inc.*, 652 F. App'x. 330, 337 (6th Cir. 2016) (citations omitted). "An abuse of discretion occurs where the reviewing court has 'a definite and firm conviction that the court below committed a clear error of judgment.'" *In re Wingerter*, 594 F.3d at 936 (quoting *In re M.J. Waterman Assocs., Inc.*, 227 F.3d 604, 607–08 (6th Cir. 2000)). Sanctions imposed based on an erroneous view of the law or a clearly erroneous assessment of the evidence are necessarily an abuse of discretion. *See In re Jones*, 546 B.R. 12, 16 (B.A.P. 6th Cir. 2016). Ultimately, the question is not whether the reviewing court would have imposed sanctions, "but rather whether a reasonable person could agree with the bankruptcy court's decision[.]" *In re Wingerter*, 594 F.3d at 936 (quoting *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d at 608). In other words, "if reasonable persons could differ on the issue, then there is no abuse of discretion." *Id*.

## III. DISCUSSION

The bankruptcy court sanctioned Mr. Johnston for violating Bankruptcy Rule 9011. Rule 9011 provides, in relevant part:

> (a) SIGNATURE. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. . . .
>
> (b) REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.] . . .

(c) SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) *How Initiated*.

(A) *By Motion*. . . . The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged [filing] . . . is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). . . .

(B) *On Court's Initiative*. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Fed. R. Bankr. P. 9011.

Also, relevant here is 11 U.S.C. § 109(e), which provides, in relevant part: "[o]nly an individual with regular income that owes, . . ., or an individual with regular income and such individual's spouse," that owe "noncontingent, liquidated, unsecured debts" below a certain statutory amount may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e).

Mr. Johnston asserts that the bankruptcy court, in considering sanctions sua sponte, erred by evaluating his conduct under an objective standard, and instead should have evaluated his conduct under a subjective standard, which requires an act "akin to contempt of court." Under the subjective standard—and even the objective standard—Mr. Johnston contends that the record does not support the sanctions against him, and therefore, the bankruptcy court abused its discretion.

**A.     The bankruptcy court applied the correct legal standard when deciding to issue sua sponte sanctions against Mr. Johnston under Bankruptcy Rule 9011.**

In support of his argument that the bankruptcy court abused its discretion by imposing sanctions under Bankruptcy Rule 9011, Mr. Johnston urges this Court to adopt the Second Circuit's heightened standard for issuing sua sponte sanctions under Federal Rule of Civil Procedure 11. Under the Second Circuit's subjective approach, a court may not impose Rule 11 sanctions against a party or attorney

unless there is evidence of bad faith or actions "akin to contempt of court." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995). In *Wesely v. Churchill Development Corp.*, we followed the Second Circuit's approach and held that the district court in that case abused its discretion by issuing *Rule 11* sanctions without finding that the attorney's actions were subjectively contemptuous. No. 95-4024, 99 F.3d 1141, *3 (6th Cir. Oct. 24, 1996) (unpublished table decision). Mr. Johnston argues that we should expand on *Wesely*—an unpublished table decision—and apply to sanctions imposed under Bankruptcy Rule 9011 a standard akin to a contempt-of-court standard. We disagree.

To start, binding Sixth Circuit precedent instructs courts to apply an objective standard when evaluating the imposition of sanctions sua sponte pursuant to Bankruptcy Rule 9011. *See In re Wingerter*, 594 F.3d at 939; *see also In re Fordu*, 201 F.3d 693, 711 (6th Cir. 1999) (affirming the bankruptcy court's denial of sanctions where the bankruptcy court concluded the conduct at issue "was reasonable under the circumstances"). The bankruptcy court in *Wingerter* imposed sanctions sua sponte against a creditor for filing a proof of claim without having conducted a reasonable pre-filing inquiry into the validity and factual basis of its claim in violation of Bankruptcy Rule 9011(b). *In re Wingerter*, 594 F.3d at 939. The creditor's appeal eventually reached this court, where we explained:

> The test for imposing sanctions [under Rule 9011(b)] is whether the individual's conduct was reasonable under the circumstances." *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 711 (6th Cir. 1999). "In applying this test, the bankruptcy court is not to use the benefit of hindsight but should test the signer's conduct by inquiring what was reasonable to believe at the time the [filing] was submitted." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 481 (6th Cir.1996) (alterations, citation, and internal quotation marks omitted).

*Id.* (alterations in original); *see also In re Jones*, 546 B.R. at 34 (reviewing sanctions issued sua sponte against an attorney under Bankruptcy Rule 9011 and stating: "the bankruptcy court must evaluate the attorney's conduct based on what was reasonable to believe at the time the [petition] was submitted").

In relying on the Rule-11-specific holding in *Wesely*, Mr. Johnston also ignores a critical difference between the safe harbor provisions in Rule 11 and Rule 9011. Even assuming that the safe harbor provision in § 9011(c)(1)(A) applies to § 9011(c)(1)9B), the safe harbor provision has an exception for when "the conduct alleged is the filing of a petition." Fed. R. Bankr. P. 9011(c)(1)(A). This is because filing "a [bankruptcy] petition has immediate serious consequences, including the imposition of the automatic stay under § 362 of the Code, which may not be avoided by the subsequent

withdrawal of the petition." Fed. R. Bankr. P. 9011 advisory committee's note to 1997 amendment. In other words, even if Mr. Johnston was arguing that he took corrective action by withdrawing or moving to dismiss the 2016 and 2018 petitions, his argument still fails because such an argument is expressly precluded under Rule 9011(c)(1)(A).

Accordingly, in assessing whether to impose sanctions sua sponte against Mr. Johnston, the bankruptcy court was not required to find that he acted in bad faith, in a manner "akin to contempt of court," or with a certain *mens rea*. As the BAP correctly noted, this court's precedents establish that the bankruptcy court had to determine "whether [Mr. Johnston]'s conduct was reasonable at the time he filed the documents at issue." *In re Bagsby*, 2020 WL 2025906 at *6. The bankruptcy court quoted Bankruptcy Rule 9011(b) regarding an attorney's representations to the court in signing and filing a petition or other papers. In the order, the bankruptcy court correctly and necessarily underscored that a deceased person or their estate is ineligible to file for bankruptcy. The court discussed Mr. Johnston's representations in submitting the 2016 and 2018 bankruptcy petitions and concluded that his conduct, as an attorney, was unreasonable under the circumstances. Therefore, the bankruptcy court did not impose sanctions sua sponte based on an erroneous view or improper application of the law.

**B.      The bankruptcy court did not clearly err in assessing the evidence supporting sanctions.**

Mr. Johnston next argues that the bankruptcy court abused its discretion because "[t]he evidence simply does not support [its] finding[s][.]" Appellant Br. at 42. To establish that the bankruptcy court's findings of fact were an abuse of discretion, an attorney must show why specific factual findings are clearly erroneous. *See In re Wingerter*, 594 F.3d at 941 ("[A] court abuses its discretion when, among other things, it 'relies upon clearly erroneous findings of fact.'" (quoting *In re Gasel Transp. Lines, Inc.*, 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005))).

Here, the bankruptcy court made several findings of fact regarding Mr. Johnston's conduct, as outlined above. The Order then explained how his conduct violated Bankruptcy Rule 9011:

> Given that (1) Mr. Johnston made no inquiries and conducted no research before filing either bankruptcy case in Gayle [Bagsby]'s name, (2) there was no basis in existing law to support a reasonable possibility that a Chapter 13 case would be successful, and (3) the cases were filed for the express purpose of delaying foreclosure actions, Mr. Johnson's conduct was not reasonable under the circumstances.

Mr. Johnston does not dispute any specific findings of fact in the order or connect those findings to the conclusions drawn by the bankruptcy court. Instead, Mr. Johnston merely argues, vaguely, that the bankruptcy court's "findings do not comport with the evidence presented[,]" and that the evidence does not support a finding that his conduct was "an abuse of the bankruptcy system." Appellant Br. at 31, 42. His vague, generalized argument is misplaced. The bankruptcy court expressly stated that Mr. Johnston's "violations, particularly [those] of Rule 9011, amount[] to abuse of the bankruptcy system and subject him to sanctions in accordance with those findings." The court clearly determined that Mr. Johnston violated Bankruptcy Rule 9011 and, therefore, was being sanctioned for those violations. The bankruptcy court was not required to find that Mr. Johnston's actions were an abuse of the bankruptcy system, and the court did not state that the sanctions were based on a such a finding.

Mr. Johnston admitted all material factual findings and related conclusions detailed in the Order. He conceded that he filed skeletal petitions under his own signature in 2016 and 2018, and that he never filed other required documents including schedules and fee disclosures. Mr. Johnston does not contest the bankruptcy court's factual or legal conclusions about the purpose or effect of filing the 2016 and 2018 petitions. In other words, Mr. Johnston conceded that he filed both petitions for the sole purpose of delaying foreclosure proceedings—an improper purpose. *See* Fed. R. Bankr. P. 9011(b)(1). Further, he neither disputes that he did not conduct a reasonable inquiry into Gayle Bagsby's estate's eligibility to file bankruptcy petitions before he filed them, nor argues that his failure to perform any legal research was reasonable under the circumstances. Mr. Johnston merely asserts that he had never been asked to determine a probate estate's eligibility for bankruptcy relief. Yet, as the bankruptcy court noted, Mr. Johnston has been practicing law for almost forty years, most of his legal career has been in bankruptcy, and his three-member law firm also handles probate matters. Mr. Johnston claims that he "made a mistake or, at worst, was negligent," and therefore, the evidence does not support the sanctions against him. Appellant Br. at 42. Ultimately, we cannot say that Mr. Johnston's assertions are supported by the record, and he fails to establish that the bankruptcy court's order is based on clearly erroneous findings of fact or improper conclusions based on those facts.

Finally, Mr. Johnston argues, generally, that "[t]he evidence shows only that [he] made a mistake or, at worst, was negligent." *Id.* We need not consider this argument because "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived[.]"

*In re HNRC Dissolution Co.*, 585 B.R. 837, 849 (B.A.P. 6th Cir. 2018) (second alteration in original) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)).

Based on the foregoing, we hold that the bankruptcy court did not make factually erroneous conclusions or abuse its discretion in determining that Mr. Johnston's actions, in filing for bankruptcy on behalf of a deceased person, were unreasonable under the circumstances, violated Rule 9011, and "were therefore sanctionable." *See In re Wingerter*, 594 F.3d at 941.

## IV.  CONCLUSION

For these reasons, we **AFFIRM** the decisions of both the BAP and the bankruptcy court.